Matthew H. McCarthy, Appellant, *vs.* Henry Crawford, Appellee.

*Opinion filed December 15, 1908—Petition stricken Feb. 5, 1909.*

1. Assignment—*when certificate may be assigned the same as a certificate of stock.* A certificate issued by a receiver under an order of court to evidence a debt against a corporation which is a chose in action assignable in equity, which certificate states on its face that it is registered and transferable on the books of the company, and which contains a form of assignment and power of attorney similar to a certificate of stock, may be assigned in the same manner and with the same effect as a certificate of stock.

2. Same—*assignee of certificate has all the rights of the original holder.* Where a receiver's certificate of indebtedness against a corporation is transferable by assignment the same as a certificate of stock, the effect of an assignment thereof is to vest the assignee with all the rights of the assignor in the distribution of assets, even though the certificate provides that it is transferable only on the books of the corporation and upon surrender of the

certificate, as such provision is for the protection or convenience of the assignee or the receiver and does not concern the assignor.

3. PRINCIPAL AND AGENT—*effect where principal clothes broker with indicia of ownership.* Where the holder of a certificate of indebtedness purporting to be transferable by assignment signs the form of transfer and power of attorney in blank and delivers the certificate to a broker to sell, he thereby clothes the broker with the customary indicia of absolute ownership, and as against a subsequent *bona fide* purchaser of the certificate he is estopped to deny that the purchaser is his assignee for value, even though the broker has not accounted for the proceeds.

4. SAME—*when the principal is bound by factor's disposition of goods.* If the principal has, by any act of his, been the means of imposing upon the person dealing with the factor and inducing him to believe the factor was clothed with authority to dispose of the goods in the manner in which he did dispose of them, the principal is bound by such disposition.

5. CONSIDERATION—*when pre-existing debt is a valuable consideration.* Where a certificate of indebtedness purporting to be transferable by assignment and bearing a form of transfer and power of attorney signed in blank by the original holder is delivered by a broker to a customer as security for certain railroad stocks for which the customer has paid, if the customer subsequently agrees with the broker to buy the certificate in lieu of taking the railroad stocks the pre-existing debt of the broker for the money advanced is a valuable consideration, and the purchaser is entitled to the same protection as though he had paid a new consideration.

APPEAL from the Branch Appellate Court for the First District;—heard in that court on appeal from the Superior Court of Cook county; the Hon. GEORGE A. DUPUY, Judge, presiding.

In 1903 the United States Circuit Court for the Northern District of Illinois appointed James H. Eckels and Marshall E. Sampsell receivers for the Chicago Union Traction Company. The receivers, acting under the authority of an order entered July 10, 1905, with the consent of all the parties, issued to the appellee, Henry Crawford, a certificate of indebtedness, in which the receivers certified that the Chicago Union Traction Company was indebted to Craw-

ford in the sum of $10,815.24, with interest at six per cent per annum, payable to the registered holder of the certificate, quarterly, at the office of the treasurer of said company; that the certificate was one of a series executed by the receivers in conformity with the order of July 10, 1905, to which reference was had; that the registered holder had in all things complied with the conditions of said order, and the claim upon which said certificate was issued had been audited and approved by the receivers under said order as a valid claim against the Chicago Union Traction Company, and that said certificate was registered and transferable only on the books of the company by the holder thereof, or his attorney, upon surrender of the same. On the back of the certificate was a printed form of assignment and power of attorney authorizing a transfer on the books of the company, with blank spaces left for the names of the assignor, assignee and attorney. Crawford signed the certificate on the back in blank and delivered it to A. J. Whipple & Co., brokers in the city of Chicago, with directions to sell for him. On August 24, 1905, the appellant, Matthew H. McCarthy, employed Whipple & Co. to purchase for him one hundred shares of Atchison, Topeka and Santa Fe railroad stock. The brokers represented that they had purchased the stock, and on August 28, 1905, McCarthy paid them $8616.30, being, with $500 theretofore paid, the balance in full therefor. They told him the stock had come from New York but had to be sent back to be transferred, because it was made out in the wrong name. The statements were false. The stock was not bought and paid for, but the entire amount paid by McCarthy was appropriated by the brokers to the payment of their own debts. In response to the demands of McCarthy for the stock or for his money or security, Whipple & Co. early in September delivered Crawford's certificate of indebtedness to McCarthy to hold as security for the delivering of the stock, telling him that Whipple was the owner of the stock. A few days later

McCarthy proposed to buy the certificate of Whipple, and a sale was agreed on at a price of ninety-five per cent of its face, or $10,274.49. The money McCarthy had paid on the stock purchased was credited on the price of the certificate. The balance, $1158.19, McCarthy agreed to pay, and he has ever since retained the certificate. Meanwhile, Whipple & Co. having reported to Crawford that they had been unable to obtain an offer for his certificate that they cared to submit to him, on October 9, 1905, Crawford demanded the immediate return of the certificate. Whipple answered that he could not deliver it then because it had been sent to New York, where there were some people who wanted to bid on it. On October 13 a petition in bankruptcy was filed against Whipple & Co., and they were adjudged bankrupts and a receiver appointed. On October 14 McCarthy presented the certificate to the receivers of the traction company, having first written Crawford's name as assignor and his own name as assignee and attorney in the spaces left therefor in the printed transfer on the back, above the signature of Crawford, and he requested the receivers to issue a new certificate to him, which they refused to do. McCarthy subsequently filed his bill in the superior court of Cook county against Crawford, the Chicago Union Traction Company and its two receivers, alleging that he was entitled to the transfer of the certificate by the receivers of the traction company and was the equitable owner thereof, and praying that the traction company be directed, through its receiver, to make the transfer, and that Crawford be enjoined from setting up any claim of right, title or interest to the certificate.

The answer of Crawford admitted the issue to him of the certificate, and alleged that he employed Whipple & Co., as brokers, to negotiate its sale for cash at a designated price; that it was not delivered to them when defendant employed them or for a considerable period thereafter, and was not delivered in order that any intending purchaser

could inspect it, the signature of the defendant to the blank assignment on the back having been placed there long before the employment of said brokers. He also filed his cross-bill, in which he prayed that the court would decree that he was the lawful owner of the certificate; that the assignment to McCarthy on the back of said certificate was without consideration or authority; that McCarthy should be enjoined from setting up any title or right of possession and that the certificate be surrendered to the complainant in the cross-bill. McCarthy answered the cross-bill, and on the final hearing the court rendered a decree finding that Crawford was the lawful owner of the certificate, directing its delivery to him and enjoining the receivers from recognizing the assignment to McCarthy or issuing a new certificate to him. The Appellate Court having affirmed this decree, an appeal has been taken to this court.

JULE F. BROWER, and SAMUEL B. KING, for appellant:

The unauthorized sale or pledge, by a broker or other bailee, of a security endorsed in blank, which has been entrusted to the broker by the person to whom such security was issued, will give a good title to the person to whom such security is wrongfully sold or pledged, provided he received it for value, without actual notice of the broker's fraud. *Otis* v. *Gardner,* 105 Ill. 436; *Koch* v. *Willi,* 63 id. 144; *McNeil* v. *Bank,* 46 N. Y. 325; *Williams* v. *Fletcher,* 129 Ill. 356; *Johnston* v. *Laflin,* 103 U. S. 800; *Scollans* v. *Rollins,* 179 Mass. 346.

A chose in action accompanied by such an assignment is distinguished from goods held by a factor, (*McNeil* v. *Bank,* 46 N. Y. 325,) and the contrary rule that once prevailed in Great Britain does not prevail here. *Scollans* v. *Rollins,* 179 Mass. 346; *Rice* v. *Gilbert,* 173 Ill. 348.

The recital on the back of the certificate, over the holder's signature, that he had, for value received, bargained and sold the certificate, excused the assignee from inquir-

ing of the holder as to his former title. *Johnston* v. *Laflin,* 103 U. S. 800; *McNeil* v. *Bank,* 46 N. Y. 325; *Stewart* v. *Metcalf,* 68 Ill. 109.

The recital, over the holder's signature, on the back of the certificate, "that I, for value received, have bargained and sold, and by these presents do bargain, sell and assign, unto ........ the within certificate of indebtedness," creates an estoppel upon the holder which precludes him from asserting title to the certificate. *Osgood* v. *McConnell,* 32 Ill. 74; *Wyncoop* v. *Cowing,* 21 id. 570; *Stewart* v. *Metcalf,* 68 id. 109; 24 Am. & Eng. Ency. of Law, (2d ed.) 58.

A pre-existing debt or obligation is equivalent to a present consideration, as constituting a consideration which will support the title of a purchaser upon such consideration, as against the equities of a prior claimant to the property sold. *Manning* v. *McClure,* 36 Ill. 490; *Butters* v. *Haughwout,* 42 id. 18; *Bowman* v. *Millison,* 58 id. 36; *Railroad Co.* v. *Phillips,* 60 id. 190; *Koch* v. *Willi,* 63 id. 145; *Kranert* v. *Simon,* 65 id. 344; *Otis* v. *Gardner,* 105 id. 436.

One who takes a security assigned by endorsement in blank is not put upon notice of equities between antecedent holders by the fact that there are unfilled blanks in the instrument of assignment. *Johnston* v. *Laflin,* 103 U. S. 800; *McNeil* v. *Bank,* 46 N. Y. 325.

Julius A. Johnson, (Charles H. Aldrich, of counsel,) for appellee:

The certificate in question is neither a negotiable nor *quasi* negotiable instrument. It is not a substantive obligation, but is mere evidence of an indebtedness proven against an estate under an administrative order entitling the holder to a distributive share in the assets whenever the distribution is ordered. *Richmond* v. *Irons,* 121 U. S. 52; *Turner* v. *Railroad Co.* 95 Ill. 134; *Trust Co.* v. *Railway Co.* 117 U. S. 434; *Bank* v. *Hazard,* 30 Fed. Rep. 484.

The action of the brokers was wholly without authority from their principal and was concealed from him. The transfer was therefore of no effect. *Potter* v. *Dennison,* 5 Gilm. 590; *Rodriques* v. *Hefferman,* 5 Johns. Ch. 429; Mechem on Agency, sec. 994; *Bertholf* v. *Quinlan,* 68 Ill. 297; *Gray* v. *Agnew,* 95 id. 319; *Bank* v. *Schween,* 127 id. 573; *Clemmer* v. *Bank,* 157 id. 206; *Warner* v. *Martin,* 11 How. 209; *Bank* v. *Gillespie,* 137 U. S. 411.

The pretended sale was not made for any valuable consideration or in the usual course of business, but was fraudulent and felonious. *Fawcett* v. *Osborne,* 32 Ill. 411; *Stock Exchange* v. *Bendinger,* 109 Fed. Rep. 927.

Mr. JUSTICE DUNN delivered the opinion of the court:

The certificate was not an ordinary receiver's certificate issued for money borrowed or a liability incurred by the receivers in the performance of their duties. It was merely evidence of the existence of a debt in favor of the appellee, against the corporation whose property the court was administering. It was not a negotiable instrument. The debt, however, of which the certificate was the evidence was a chose in action and was assignable in equity. That it was expected and intended that the certificates, which by the order of the court were substituted for the original evidences of indebtedness of the corporation, would be transferred is manifest from the fact that it was stated on the face of each certificate that it was registered and transferable only upon the books of the company upon surrender of the certificate; that the interest was made payable to the registered holder, and that on the back of the certificate was printed, for convenience of transfer, a form of assignment and power of attorney similar to those ordinarily found on the back of certificates of corporate stock. The effect of an assignment would be to substitute the assignee for the original certificate holder, to enable him to share in

any distribution which might be made of the assets and to enforce his rights in the pending proceeding to the same extent as the original holder. The registration of transfers enables the receivers and all others interested to know who were the parties interested.

Whipple & Co. were the agents of Crawford for the sale of his certificate. He contends that he is not bound by their sale because they were brokers, and the sale was beyond their authority because not made in the usual course of business or for cash, but in settlement of an existing indebtedness from themselves to the vendee. There can be no question of the rule that a factor cannot pledge the goods of his principal, that he cannot dispose of them by way of exchange or barter, and that he cannot sell them for a prior debt. And this is so even though the pledgee or vendee does not know that the factor is such and though the factor is in possession of the goods and sells them as his own. But this case is not to be decided on that principle. The rule is subject to the qualification mentioned by Kent in laying down the doctrine, that "to guard against abuse and fraud it is admitted that if the factor be exhibited to the world as owner with the assent of his principal, and by that means obtains credit, the principal will be liable." (2 Kent's Com. 627.) Whenever the factor has bartered or disposed of goods in a manner not within the ordinary and accustomed modes of transacting the like business, the principal may follow and reclaim the property, and in such case it is wholly immaterial whether the person dealing with the factor knew him to be such or not. But if the principal has by any act of his been the means of imposing upon the person dealing with the factor and inducing him to believe the factor was clothed with authority to dispose of the goods in the manner in which he did, the principal is bound by such disposition. (*Potter* v. *Dennison,* 5 Gilm. 590.) In *Williams* v. *Fletcher,* 129 Ill. 356, this principle was announced in language quoted from *McNeil* v. *Tenth Nat. Bank,* 46 N. Y.

325, as follows: "It must be conceded that as a general rule, applicable to property other than negotiable security, the vendor or pledgor can convey no greater right or title than he has. But this is a truism predicable of a simple transfer from one party to another where no other element intervenes. It does not interfere with the well established principle that where the true owner holds out another, or allows him to appear, as the owner of or as having full power of disposition over the property, and innocent third parties are thus led into dealing with such apparent owner, they will be protected. Their rights in such cases do not depend upon the actual title or authority of the party with whom they deal directly, but are derived from the act of the real owner, which precludes him from disputing, as against them, the existence of the title or power which, through negligence or mistaken confidence, he caused or allowed to appear to be vested in the party making the conveyance."

The law has been generally established that as between the parties the transfer of stock by delivery of the certificate, with power of attorney or endorsed in blank, passes title without transfer on the books of the company, even when the by-laws of the company provide to the contrary. (*Otis* v. *Gardner,* 105 Ill. 436; *Rice* v. *Gilbert,* 173 id. 348.) Such blank transfer on the back of the certificate, to which the holder has affixed his name, is a good assignment and the party to whom it is delivered is authorized to fill it up. It may be filled up with the name of a remote transferee, and the name to be inserted concerns only the purchaser. (*McNeil* v. *Tenth Nat. Bank,* 46 N. Y. 325; *Johnston* v. *Laflin,* 103 U. S. 800; *White* v. *Vermont and Massachusetts Railroad Co.* 21 How. 575.) The form in which the certificate was issued, the usage and practice indicated thereby as to the method of assignment, the appellee's own act in signing the power of attorney, all correspond with the customary rules with reference to the assignment of simi-

lar documents.  Though this is not a certificate of stock, it is manifest that it was intended to be assigned in the same manner, and no reason is seen why it may not be so done and with the same effect.

By signing the transfer and power of attorney in blank, from whatever motive, and delivering the certificate so endorsed to Whipple & Co., the appellee clothed them with the customary indicia of absolute ownership.  He had done all that was necessary for him to do,—all that was possible for him to do to indicate to all persons interested that they owned the certificate.  With the transfer on the books of the company he had nothing to do.  It did not concern him. Its object was the protection and convenience of the assignee or the receivers.  Appellee by this positive act enabled Whipple & Co. to deceive appellant, as they could not otherwise have done, to induce him to believe they were the owners of the stock and to sell the stock to him.  The certificate not being negotiable paper was subject in the hands of appellant to all the equities existing against the certificate itself,—to all equities against the original holder or in favor of the maker; but appellee could set up no equities against appellant, because by his writing he had estopped himself from claiming that Whipple & Co. were not his assignees for value.

In *Otis* v. *Gardner, supra,* the owner of a certificate of stock in a corporation endorsed it in blank and delivered it to his brother, taking a receipt, in which the brother recited that he had borrowed the stock and agreed to return it on demand.  Being indebted, the brother pledged the stock to secure his notes.  The owner of the stock having died, his administrator brought suit against the pledgee to recover possession of the stock.  In disposing of this question, on page 443, the court said:  "The intestate placed the certificates in the hands of Chauncey T. Bowen, with a blank assignment written thereon, authorizing an absolute transfer of the stock to the assignee under the by-laws of the com-

pany. The exact use the assignee should make of the stock does not appear from anything in the record, but as the use he might make of it was in no way limited by the terms of the assignment, it is reasonable to presume the assignee was authorized to make any legitimate use of it that a rightful owner might,—that is, he might sell it or pledge it in the usual course of business. That was done in this case. It was pledged to Gardner, in the usual course of business, as collateral security for the indebtedness of the holder, and was taken in good faith, without the slightest knowledge that anyone other than the pledgor claimed or had any interest in the stock represented by the certificates. As has been seen, the certificates of stock were placed in the hands of Bowen by the intestate in such condition they could be readily sold or hypothecated by him, and if his assignee made an improper use of them, the assignor, if living, could get no relief against that which he deliberately authorized to be done if it would affect injuriously an innocent purchaser for value, and his personal representative can have no relief that could not be granted on a like bill by the intestate, if living. The principle is, that when one of two or more persons must suffer loss, upon him whose conduct made it possible for loss to occur should the consequences ultimately rest."

It is claimed that appellant's purchase was not in the usual course of business and for a valuable consideration. The certificate was first delivered to appellant in response to his demand for security to secure the delivery of the railroad stock to him. After some delay he proposed to take the certificate instead of completing the purchase of the stock. There is no basis in the evidence for supposing this was anything other than an ordinary proposition to buy the certificate or that there was in it any concealed or unfair purpose. His proposition was accepted, and the $9116.30 he had paid for the purpose of being used in the purchase of the stock was applied to the payment for the certificate.

Whipple & Co. were clothed with all the indicia of owner-ship, and appellant, with no knowledge or reason to suspect any infirmity in their title, purchased the certificate. Un-der such circumstances the pre-existing debt is a valuable consideration, and he is entitled to be protected to the same extent as if he had paid a new consideration. *Butters* v. *Haughwout,* 42 Ill. 18; *Schwabacker* v. *Rush,* 81 id. 310; *Kranert* v. *Simon,* 65 id. 344.

It is insisted by appellee that appellant's bill and his answer to the cross-bill are inconsistent and that the facts proved do not sustain the bill. The inconsistency is more imaginary than real. The answer sets up the facts more in detail than the bill, but they are not inconsistent. Both concede that the absolute ownership of the certificate was in appellee; that he delivered it to Whipple & Co., not as purchasers or owners, but solely as brokers, to sell for ap-pellee. Both allege the payment of the money to Whipple & Co., the order to buy stock, their failure to do so, their offer to appellant of the certificate instead of the stock, and its acceptance by appellant and the filling of the blank in the assignment. Both allege that by means of the premises the appellant became the equitable owner of the certificate. Whether Whipple & Co. purported to act as agents of ap-pellee or as owners of the certificate is not alleged in either bill or answer, but the facts are stated with differences only in the extent of detail. There is no substantial difference in the claim attempted to be stated in appellant's different pleadings, and on the evidence he was entitled to the relief prayed for.

The judgment of the Appellate Court and the decree of the superior court will be reversed and the cause remanded to the superior court, with directions to enter a decree in ac-cordance with the prayer of the bill upon the payment by appellant, for the use of appellee, of $1158.19, with five per cent interest from September 11, 1905.

*Reversed and remanded, with directions.*