J. H. JEFFERSON, Appellant, v. CENTURY SAVINGS BANK and M. J. SAMS, Appellees.

**Principal and surety:** PAYMENT BY SURETY: SUBROGATION. A surety upon full payment of the principal's obligation is entitled to be subrogated to the rights of the payee, and to have the benefit of any security held by him from the principal maker; but upon payment of only part of the principal's debt the right of subrogation does not exist, and the only right of the surety is to sue the principal maker for the amount so paid.

**Judgments:** CONCLUSIVENESS. A judgment that the payee of a note holding collateral security was entitled to apply money paid on the collateral to the satisfaction of the debt was conclusive against a party to the suit who failed to appeal from the judgment.

**Bills and notes:** COLLATERAL SECURITY: PAYMENT. Where the payee of a note received as proceeds of collateral held by him a sum in excess of the debt, the debtor was entitled to a cancellation of his obligation, and a return of the security.

**Appeal:** DELAY: REVIEW. Although a party failed to appeal until the last day allowed by law, and filed no *supersedeas* bond, still he was entitled to a review of the judgment as against a party who had performed the judgment, and who might have appealed and protected himself against performance if he had elected to do so.

*Appeal from Polk District Court.*—HON. W. H. McHENRY, Judge.

THURSDAY, MARCH 11, 1909.

REHEARING DENIED SATURDAY, JUNE 5, 1909.

PLAINTIFF brought an action against the Century Savings Bank to recover possession of his cancelled note, together with the uncollected collateral which had been deposited with the note. There was a judgment dismissing the petition, and the plaintiff appeals.—*Reversed* and *remanded*.

J. A. Dyer, for appellant.

Dale & Harvison, for appellee Century Savings Bank.

C. E. Hunn, for appellee Sams.

EVANS, C. J.—On January 10, 1905, the plaintiff executed to the defendant bank his promissory note for $275, and, as collateral security therefor, delivered to the bank a certificate of stock of the par value of $100, and a promissory note of $368. This $368 note was dated January 2, 1905, due in one year, payable to plaintiff, and signed by M. H. Sams, Charles D. Bowles, and L. H. Needham. No payments were made by the plaintiff personally upon his note, nor were any collections made on his collateral until February, 1906, as hereinafter explained. On November 10, 1905, L. H. Needham himself became a borrower at the defendant bank, and executed his note for a loan of $106. He put up as collateral security a $600 note signed by one Dixon, and payable to the Co-operative Manufacturing Company, and indorsed in blank. The contract under which Needham borrowed the $106 and put up as collateral the Dixon note for $600 authorized the bank to apply the proceeds of such collateral first to the payment of the $106 note, and the excess to be applied "to any other note" then held by the bank. In February, 1906, Dixon paid to the bank $430 upon the $600 note. The bank applied this fund first to the discharge of the $106 note. Of the excess it applied $289 as a credit upon the $368 note signed by M. H. Sams,

Charles D. Bowles, and L. H. Needham, which was owned
by the plaintiff Jefferson, and held by the bank as security
for Jefferson's $275 note. The amount so credited on
the $368 note was the full amount due on the $275 note
owing by Jefferson, and the bank treated such collection
and credit as a payment of such $275 note which it held
against Jefferson. Jefferson thereupon demanded his can-
celled note for $275, and his reduced collateral, viz., his
$100 certificate of stock, and his $368 note, reduced by
the credit of $289. The bank refused to surrender the
same. The reason for such refusal was that the Co-opera-
tive Manufacturing Company claimed that it owned the
Dixon note, and that, although it loaned it to Needham for
the purpose of obtaining the $106 loan, he had no authority
to use it for any other purpose, and that the bank had no
authority to apply the proceeds of its collection to any
other purpose than to pay the same over to the Co-operative
Manufacturing Company as the real owner of the Dixon
note. This manufacturing company assigned its claim to
M. J. Sams, and she intervened in this action. As such
intervener, she claimed the right to recover of the bank the
surplus proceeds of the Dixon note over and above the
amount necessary to pay the $106 note. Trial being had,
the court found that the bank was entitled to apply the
money as it did. It held, however, that the $289 applied
as a credit on the $368 note should be deemed as a pay-
ment made by L. H. Needham, and it held, further, that L.
H. Needham was surety only on such note, and it erron-
eously held that Needham as such surety was entitled to be
subrogated to the rights of the bank as against the plaintiff.
It ordered the defendant bank to turn over to Needham
(who was not a party to the case) the $275 note which
it held against the plaintiff, together with all the collateral,
viz., the $100 certificate of stock, and the $368 note on
which Needham was a signer; and it dismissed plaintiff's
petition, and entered judgment against him for costs.

The theory of the trial court is indicated by the following quotation from the written opinion: "I hold as a matter of law that the bank had the right to apply this money collected on the Dixon note as it was applied by the bank. As a result of this transaction, the Jefferson note for $275 is paid, but paid by the surety Needham. He therefore is entitled to be subrogated to the rights of the bank in the Needham note, and the collateral deposited with them." Inasmuch as Needham was one of the signers of the $368 note, he was bound to pay it, whether surety or principal, and was entitled to no subrogation as against the interest of the plaintiff, who was the owner of the note. While the bank held the note as collateral security, it nevertheless held it as trustee for the plaintiff. If the plaintiff had held any security from the principal maker of the note, then the surety upon full payment of the note would be entitled to be subrogated to the benefit of such security. In this case there was neither full payment of the note by the surety nor was there any security held by the plaintiff. Needham, therefore, even though he were surety, had no right of subrogation. There was nothing to which a right of subrogation could be applied. The only right the surety had was to sue the principal maker for the amount paid by him.

*1. PRINCIPAL AND SURETY: payment by surety: subrogation.*

The result of the decree is incongruous. It transfers to Needham the $275 note against the plaintiff, and the $368 note on which Needham is himself a signer, and upon which he is indebted to the plaintiff, and the $100 certificate of stock. Whether the bank had a right at all to apply the $289 out of the Dixon collection as a credit upon the $368 note was a debatable question. It may be that Mrs. Sams ought to have been awarded that money, and that the credit ought to have been cancelled, and that the $275 note owed by the plaintiff ought to have been revived. But the trial

*2. JUDGMENTS: conclusiveness.*

court found otherwise. From that finding Mrs. Sams has not appealed. To that extent, therefore, the judgment below is conclusive.

If the bank, therefore, was entitled to so apply that money, it necessarily followed that the plaintiff was entitled to the benefit of it. It was a legal impossibility for the bank to collect $289 on plaintiff's collateral, and not give the plaintiff the benefit of it in the cancellation of his $275 note.

3. BILLS AND NOTES: collateral security: payment.

It follows of logical necessity that the plaintiff is entitled to a return of his cancelled note and of his certificate of stock, and of his $368 note, reduced by the credit as aforesaid.

II. The defendant bank insists that this appeal should be dismissed because the plaintiff failed to take a prompt appeal, and failed to appeal until the last day allowed therefor, and failed to file a *supersedeas* bond. The appellee bank contends

4. APPEAL: delay: review.

that, by reason of such delay and failure of appellant, the bank was compelled to perform the decree of the lower court, and did perform such decree, and delivered the papers as directed in the decree. It is a complete answer to this position that the plaintiff had as much right to appeal on the last day allowed by law as upon the first, and that he was not required to file a *supersedeas* bond unless he elected to do so for his own advantage. The bank itself could have appealed and protected itself against the performance of the decree if it had so elected. Needham was not a party to the record, and why relief should have been awarded to him is not manifest from the record. However, no other party than the plaintiff having appealed, we have no question presented to us of the relative rights of the bank and Mrs. Sams and Needham. For want of appeal those rights are adjudicated by the decree of the lower court. What we now hold is that, inasmuch as the court adjudged that the bank properly

credited $289 upon plaintiff's $368 note, the indebtedness of the plaintiff to it on his $275 note is necessarily discharged, and the plaintiff is entitled to the return of his paper by the bank, or to the value thereof.

The judgment below will be reversed and remanded for a decree consistent herewith.—*Reversed.*