[No. 7993.   Department Two.   August 4, 1909.]

EUGENE M. REARDAN, *Respondent*, v. H. N. COCKRELL *et al.*,
*Appellants.*[1]

BILLS AND NOTES—BONA FIDE PURCHASERS—TRANSFER AFTER MA-
TURITY—EQUITIES BETWEEN INTERMEDIATE HOLDERS.   While the inno-
cent purchaser of a note after maturity takes the same subject to
equities between the original parties, the rule has no application to,
and he is not charged with, equities affecting intermediate holders
or indorsers, where there was no illegality in the inception of the
note.

SAME — PAYMENTS — NEGLIGENCE OF PAYOR.   Where the payors
caused a note to be placed in the hands of a third party to be
negotiated, and made payments, which through their negligence
were not indorsed thereon, to the injury of an innocent third party
purchasing the note, the negligent payors must stand the loss.

Appeal from a judgment of the superior court for Spo-
kane county, Kennan, J., entered August 1, 1908, upon find-
ings in favor of the plaintiff, in an action to foreclose a
mortgage.   Affirmed.

*Happy & Hindman* and *James T. Burcham*, for appellants.
*Danson & Williams*, for respondent.

DUNBAR, J.—This was an action brought by plaintiff to
foreclose a mortgage against the defendants.   The note
and mortgage sued upon were purchased by the plaintiff
after maturity of the note.   The note and mortgage were
given to the Northwestern and Pacific Hypotheek Bank.
They were dated August 8, 1901, becoming due in two years
thereafter.   The defendants in their answer allege, that they
had a contract with the Home Co-Operative Company and
one W. B. Sullivan, who was connected with said company,
that the mortgage should be assigned by the Hypotheek
bank to said company, who were to hold it until certain pay-
ments agreed upon were made by the appellants to the Home

[1]Reported in 103 Pac. 457.

Co-Operative Company, when the land embraced in the mortgage should be deeded to the defendants; and that certain payments had been made to the Home Co-Operative Company under said agreement that they had not been accredited with. It was alleged that the plaintiff had fraudulently obtained the possession of the note and mortgage by assignment, knowing that such payments had been made. This was denied by reply on the part of the plaintiff; and the court found, and the evidence justified the finding, that the note and mortgage were bought in good faith by the plaintiff, without notice of equities of any kind, and that full face value was given therefor. So that, accepting the findings of the court, which an examination of the record in our judgment sustains, the only question in the case is a purely legal one, viz., whether the plaintiff, purchasing without notice after maturity, is subject to the same defenses as would have been good against his immediate assignor.

It is stoutly maintained by the appellants that the rule of law is well established that one purchasing a chose in action after maturity takes subject to the equities in the case, or to equitable defenses which may be interposed to the claim. This rule is undoubtedly true as applied to equities which existed between the maker and the payee of the note, or as to any inherent disqualifications in the note. But we do not think it applies to cases of innocent purchasers of notes, where there would have been no defense to the action as against the original payee. And in this particular case the mortgage was forwarded to Sullivan, who was acting for the Home Co-Operative Company, and in obedience to a request of Sullivan, with the understanding that it was to be sold to a purchaser to be obtained by Sullivan. This was a long time after the note had become due, and it passed into the hands of the second indorsers by authorization of the payor some two years after its maturity, and without any claim of any frailty in the note, or any defense equitable or otherwise.

26—54 WASH.

On the main proposition in the case, it was said by the supreme court of California, in *Vinton v. Crowe*, 4 Cal. 309, in speaking of a negotiable note taken by the holder after its maturity:

"If the plaintiff obtained the note after its maturity, he took it subject to all subsisting equities between the maker and the payee, but not subject to such as subsisted between the maker and any intermediate holder. Such a doctrine has never been countenanced by any authority whatever, and would make a rule both dangerous and absurd."

While this statement is possibly a little too broad, some cases having been decided the other way, it seems to us that such decisions arise from a misapprehension of the reason of the original rule subjecting the note to defenses that existed between the original maker and payee thereof. But this rule has been uniformly announced by the supreme court of California since, and was reaffirmed in *First Nat. Bank v. Perris Irr. Dist.*, 107 Cal. 55, 40 Pac. 45. Most of the cases reported adversely to this are where there was an illegality in the inception of the instrument, in which case, of course, the pleading of such illegality would be permitted against the innocent holder of the note.

It is said, in 4 Am. & Eng. Ency. Law (2d ed.), p. 315, that:

"According to the English rule, which has been followed by many of the courts of the United States, the holder of negotiable paper which has been transferred to him when overdue is subject to such equities between the original parties as inhere in the instrument itself. As regards matters of defense arising out of collateral transactions, a holder unaffected with actual notice is as free as if he had taken the paper before maturity."

And many cases are cited to support the text, among others *National Bank of Washington v. Texas*, 20 Wall. 72, 22 L. Ed. 295, where Justice Swayne in a concurring opinion says:

"The transferee of overdue negotiable paper takes it liable to all the equities to which it was subject in the hands of the

payee. But these equities must attach to the paper itself, and not arise from any collateral transaction. A debt due to the maker from the payee at the time of the transfer cannot be set off in a suit by the indorsee of the payee, although it might have been enforced if the suit had been brought by the latter [citing many cases]. The result is the same whether the transfer be made by indorsement or delivery. But the protection of this principle is confined to the maker or obligor. It does not apply as between successive takers. Actual notice is necessary to effect that. There is no adverse presumption. Each one takes the legal title, and his equity is equal to that of his predecessors. 'The equities being equal, the law must prevail.' The position of the transferee must be at least as favorable as that of the assignee of a chose in action. There the assignee takes subject to the equity residing in the debtor, but not to an equity residing in a third person against the assignor."

Hence, when the company or Sullivan, or whoever it was, took the mortgage from the Hypotheek bank, he took all the interest the bank had in it, and there being no claim that there was any defense whatever as against the bank, it was not subject to defense as against the purchaser. The same rule applies, by the great weight of authority, to the interest of the second purchaser. The supreme court of the United States, in the case just above cited, quoted Chancellor Kent, where it was said by that author, in giving the reason for the rule not applying to the remote indorsers:

"The assignee can always go to the debtor and ascertain what claims he may have against the bond or other chose in action which he is about purchasing from the obligee, but he may not be able with the utmost diligence to ascertain the latent equity of some third person against the obligee. He has not any object to which he can direct his inquiries, and for this reason the assignee, without notice of a chose in action, was preferred in the late case of *Redfearn v. Ferrier et al.*, to that of a third party setting up a secret equity against the assignor. Lord Eldon observed in that case that if this were not so no assignment could be taken with safety."

The principle announced there is applicable to this case. The purchasers could inquire concerning the equities existing

between the Hypotheek bank and the appellants in this case, but could not be expected to trace all collateral agreements that might arise between the payee and many subsequent indorsers or transferees.

In *Hill v. Shields*, 81 N. C. 250, 31 Am. Rep. 499, the court said:

"There is no adverse presumption from the paper being in dishonor as between successive endorsers, as there is between the holder and the maker. Each endorser, including the payee, down the line, has and passes the legal title, and his endorsement in legal import is a contract with his endorsee and all subsequent holders by endorsement, that the maker will pay the note, or on notice he will. . . . It is settled [said the court] in this state, however, that parol testimony may be adduced under a blank endorsement to annex a qualification or special contract as between the immediate parties. . . . But between endorser in blank and remote parties without notice, the weight of authority is that parol proof is inadmissible and the contract implied by law stands absolute;"

citing 2 Parsons, 23; *Hill v. Ely*, 5 Serg. & R. (Pa.) 363, 9 Am. Dec. 376; 1 Daniel, Negotiable Instruments, 699.

"A note payable to bearer, and passed after it is due, does not carry along with it all the equities which may subsist between any intermediate bearer and the maker, it is only subject, in the hands of a bona fide holder, without notice to the equities subsisting between the original parties." *Nixon v. English*, 3 & 4 McCord (S. C.) 323.

To the same effect, *Hooper v. Spicer*, 32 Tenn. 494, and *Favorite v. Lord & Smith*, 35 Ill. 142, which latter is a case in principle identical with the one at bar, and there the court said:

"The defendants here never had any defense against the payees of this note, nor any claim against them of any nature. It is only while the note was in the hands of an intermediate endorser, that any defense existed, and then only as against the endorsers."

"In an action by a third indorsee against the maker of a

note, the defendant cannot plead a set-off against one of the intermediate indorsers." *Root v. Irwin,* 18 Ill. 147.

It is said in 4 Am. & Eng. Ency. Law (2d ed.), 317, under the heading: "But these defenses must exist at the time of the transfer," that "As in the case of nonnegotiable instruments, no subsequently arising transactions can affect the rights of a holder."

"While there is some conflict of authority in the adjudged cases as to how far a bona fide assignee of nonnegotiable instruments will be bound by latent equities of third persons unconnected with the assignment, the weight of authority strongly leans to the view that he is not to be held subject to such equities." 2 Am. & Eng. Ency. Law (2d ed.), 1081. Cases are cited from nearly every state in the Union which sustain this announcement. The further citation of accumulated authorities would be unavailing. We think the overwhelming weight of authority is as we have indicated.

The further proposition urged by the respondent, we think would compel the affirmance of this judgment, viz., that the appellants themselves having placed the note and mortgage in possession of Sullivan and the Co-Operative company, for the purpose of permitting them to negotiate the same to third persons, if a loss ensues therefrom, it must be borne by the party who negligently made the loss possible. The ordinary transaction, when a payment is made on a note, is an indorsement on the note of that amount. This indorsement was not made by the party who was acting as agent for the appellants, and if through their negligence the appellants incurred a liability, they are bound by the action of their agent as against an innocent party.

The judgment will be affirmed.

RUDKIN, C. J., CROW, MOUNT, and PARKER, JJ., concur.