WOLF v. AMERICAN TRUST & SAVINGS BANK et al.

(Circuit Court of Appeals, Seventh Circuit. April 14, 1914.)

No. 2050.

1. CORPORATIONS (§ 149*)—PLEDGE OF STOCK—BONA FIDE PURCHASER.

A broker having in his possession certain stock certificates pledged to him by complainant, with a restrictive indorsement showing that they had been pledged as collateral for moneys advanced to the owner, offered the certificates to a bank as security for loans to the broker. The certificates were refused because of the restrictive indorsement. Whereupon the broker obtained from plaintiff an assignment of the stock in blank together with an irrevocable appointment of the trustee as attorney to execute all necessary acts of transfer, and on the stock so assigned the bank made loans to the broker. Held that, though the bank knew of the first restrictive indorsement, yet, when the certificates were again offered to it without any restrictive indorsement, it was entitled to assume that the same was valid and expressed the intention of the parties, and hence it was a bona fide purchaser of the stock.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 539–546; Dec. Dig. § 149.*]

2. BILLS AND NOTES (§ 280*) — CERTIFICATE OF DEPOSIT — INDORSEMENT' TO NAMED INDORSEE.

The indorsement of a negotiable instrument to a named indorsee is a contingent contract of debt, and is also a conveyance to the indorsee of the legal title of the instrument considered as a species of property.

[Ed. Note.—For other cases, see Bills and Notes, Cent. Dig. §§ 622, 627; Dec. Dig. § 280.*]

3. BILLS AND NOTES (§ 365*) — CERTIFICATE OF DEPOSIT — TRANSFER — BONA FIDE PURCHASER.

Where complainant transferred a certificate of deposit, payable to him, to his broker by indorsement as collateral security for advances in certain speculative transactions, and the broker after maturity indorsed the certificate to a bank as security for loans to him, the bank, in so far as it relied on complainant's indorsement only as a transfer of title to the certificate, was entitled to occupy the position of a bona fide purchaser for value and to claim the right to enforce the certificate to the extent of the broker's debt, regardless of equities existing between him and complainant.

[Ed. Note.—For other cases, see Bills and Notes, Cent. Dig. §§ 944, 958, 959; Dec. Dig. § 365.*]

4. PLEDGES (§ 29*)—REPLEDGE—BONA FIDE PURCHASER—REDEMPTION.

Where a broker to whom complainant had pledged certain securities repledged them to a bank for his own debt and became a bankrupt, and

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

his trustee instituted suit against the bank to recover alleged preferences, the bank was not entitled to charge complainant with the expenses reasonably incurred in defending such suit as a part of the amount complainant was required to pay to redeem the securities on the theory that the expenses were reasonably incurred in the care and preservation of the property for complainant.

[Ed. Note.—For other cases, see Pledges, Cent. Dig. §§ 64, 74; Dec. Dig. § 29.*]

Appeal from the District Court of the United States for the Eastern Division of the Northern District of Illinois; Kenesaw M. Landis, Judge.

Suit by Charles C. Wolf against the American Trust & Savings Bank and others to redeem certain collaterals. From a decree denying complainant's right to redeem said collaterals on paying the amount of the pledged indebtedness to defendants, plaintiff appeals. Modified and affirmed.

Morris M. Townley and Frank H. Scott, both of Chicago, Ill., for appellant.

Horace Kent Tenney, of Chicago, Ill., for appellees.

Before BAKER, KOHLSAAT, and MACK, Circuit Judges.

BAKER, Circuit Judge. Appellant, cashier of a bank in Iowa, was dealing on the Chicago Board of Trade through Prince, a Chicago broker. Prince, unable or unwilling to furnish the cash required for appellant's speculations, demanded securities. Appellant placed a certificate of deposit for $24,000 and three certificates evidencing his ownership of 46 shares of the capital of his bank in the hands of Prince with authority to repledge them to the extent of his indebtedness to Prince. Appellee bank, having no actual notice of any limitations on Prince's authority, loaned Prince about $40,000 on the faith of the certificates as collateral. When Prince went into bankruptcy appellant owed him $4,911.14. This amount appellant tendered to appellee and demanded the surrender of the certificates. In this suit to redeem, the chancellor held that appellant could not take up the certificates without paying the amount of Prince's indebtedness to appellee.

I. When Prince first offered the stock certificates to appellee, they bore the following restricted indorsement: "Pay to E. H. Prince as collateral for moneys advanced from time to time. C. C. Wolf." Appellee made no loans to Prince on the bank stock in this shape. Before Prince obtained the assignment of the bank stock, to be mentioned presently, appellee inquired of another Chicago bank concerning the standing of appellant and the Iowa bank; and appellee also knew that Prince was engaged in buying and selling stocks, etc., for his customers. Then Prince wrote appellant:

"You appreciate that at times I have to make call loans in our active market, and in receiving a lot of cash grain it takes a lot of money. * * * The statement that they (the bank stock certificates) are up (with me) as collateral is a restricted statement and makes them almost useless for call loan purposes. * * * Therefore please sign the inclosed power of attorney giving me authority to transfer it (the bank stock)."

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Thereupon appellant delivered to Prince an assignment of the stock in blank together with an irrevocable appointment of Prince as attorney "to execute all necessary acts of transfer thereof." On the stock so assigned appellee made loans to Prince.

[1] Under these circumstances, appellee exercised all the diligence required by the laws of banking. True, when the stock was first offered, appellee knew that appellant was the actual owner, was retaining the legal title, and was restricting Prince's authority to pledge. But when appellant afterwards assigned the stock as stated, in contemplation of law he joined Prince in assuring appellee that Prince was then authorized to pledge the stock as his own; and appellee was no more bound to inquire into the state of the account between Prince and appellant than to question a genuine and unrestricted indorsement of commercial paper. Our judgment of the law on this point is sufficiently elaborated in National City Bank v. Wagner, 216 Fed. 473, 132 C. C. A. 533, at this session. See, also, Elliott v. Miller Co. (C. C.) 158 Fed. 868; Nelson v. Owen, 113 Ala. 372, 21 South. 75; Krouse v. Woodward, 110 Cal. 638, 42 Pac. 1084; Brittan v. Oakland Bank, 124 Cal. 282, 57 Pac. 84, 71 Am. St. Rep. 58; Skiff v. Stoddard, 63 Conn. 198, 26 Atl. 874, 28 Atl. 104, 21 L. R. A. 102; Otis v. Gardner, 105 Ill. 436; McCarthy v. Crawford, 238 Ill. 38, 86 N. E. 750, 29 L. R. A. (N. S.) 252, 128 Am. St. Rep. 95; Saloy v. National Bank, 39 La. Ann. 90, 1 South. 657; Furber v. Dane, 203 Mass. 108, 89 N. E. 227; Gass v. Hampton, 16 Nev. 185; Mt. Holly v. Ferree, 17 N. J. Eq. 117; McNeil v. Tenth Nat. Bank, 46 N. Y. 325, 7 Am. Rep. 341; Fairbanks v. Sargent, 104 N. Y. 108, 9 N. E. 870, 6 L. R. A. 475, 58 Am. Rep. 490; Smith v. Savin, 141 N. Y. 315, 36 N. E. 338; Shattuck v. Cement Co., 205 Pa. 197, 54 Atl. 785, 97 Am. St. Rep. 735; King v. Mellon Nat. Bank, 227 Pa. 22, 75 Atl. 832.

II. A certificate of deposit, payable to appellant and signed by him as cashier, was first offered to appellee. The force of such a certificate was questioned. Prince then wrote appellant, "Send a certificate made direct to me." Thereupon appellant delivered to Prince the certificate in suit, saying: "The reason I do not make it to you direct is that our directors would get onto it and possibly the bank examiner." By this instrument the Iowa bank through its vice president certified that appellant had deposited therein $24,000 payable to the order of himself on the return of the certificate and proper identification, 12 months from date, with interest at 5 per cent. Appellant made the following indorsement: "Pay to E. H. Prince or order. C. C. Wolf. Payment guaranteed, demand, notice and protest waived. C. C. Wolf." Prince held this certificate, so indorsed, until after the 12 months had elapsed, and then, by a collateral note and blank indorsement, transferred it to appellee as security for a new loan.

Appellant urges that the fact that the certificate was "overdue" when taken by appellee and the additional circumstances of appellee's knowledge that Prince was a broker, that appellant was one of his customers, and that appellant was the original owner of the certificate, put appellee on inquiry respecting the scope of Prince's authority to pledge. Here, even less than with the bank stock, have the extraneous facts any

weight; the only question is the effect of appellee's accepting the certificate after its maturity.

Valid reasons may exist for giving a banker's certificate of deposit a higher standing in the financial world than a merchant's past-due promissory note. To maintain his credit a merchant, the moment he has a right to pay, hunts up his creditor or has the money at the designated place and cancels his debt, whether it be evidenced by an account or a bill or a note. To hold a high place in banking circles a banker, the moment he has a right to pay, does not hunt up his depositors and insist that they withdraw their deposits. A merchant borrows money to use in his business for a definite time. A banker accepts deposits (this excludes, of course, money received from discounts of customers' or the banker's own strictly commercial paper) from a selected clientele, somewhat like a lawyer's or doctor's, on the assumption that, though the relationship includes that of debtor and creditor, the banker is receiving the money for the convenience and protection of the depositor, that the banker through his knowledge of banking experience respecting reserves will have enough cash on hand to meet his depositor's needs, and that the depositor will not draw down the fund except for his needs and by means of presentment and demand at the bank. (Even in those jurisdictions where a depositor by certificate may sue his banker without previous demand, the depositor who did so would likely find himself cut off the list of clients.) If the deposit is evidenced by an entry in a passbook, the banker expects that he will not be sued without previous demand at the bank and refusal or failure to pay. If the deposit is evidenced by a certificate payable "on the return of this certificate and proper identification (or properly indorsed)," the banker has the same expectation in fact. If for a payment of interest or other consideration the depositor agrees in the certificate to postpone his right of presentment, the banker expects that at the end of the stipulated period the certificate will stand as a deposit payable on demand. (And the time element also enters into passbook entries of saving deposits.) It may be that the differences between the customs of merchants and of bankers are within judicial notice; and, if so, they might sustain a holding that a banker's certificate of deposit, though ripe for presentment, is not subject to the dishonor that attaches to a merchant's overdue commercial paper.[1]

[1] Schinotti v. Whitney (C. C.) 130 Fed. 780; Starr v. Stiles, 2 Ariz. 436, 19 Pac. 225; Zuck v. Culp, 59 Cal. 142; Bates v. Capital State Bank, 18 Idaho, 429, 110 Pac. 277; Brown v. McElroy, 52 Ind. 404; Elliott v. Capital City State Bank, 128 Iowa, 275, 103 N. W. 777, 1 L. R. A. (N. S.) 1130, 111 Am. St. Rep. 198; Corbin Banking Co. v. Bryant, 151 Ky. 194, 151 S. W. 393; Brown v. Pike, 34 La. Ann. 576; Planters' Bank v. Farmers' and Mechanics' Bank, 8 Gill & J. (Md.) 449; Fells Point Sav. Inst. v. Weedon, 18 Md. 320, 81 Am. Dec. 603; Branch v. Dawson, 33 Minn. 399, 23 N. W. 552; Missouri Pac. Ry. Co. v. Cont. Nat. Bank of St. Louis, 212 Mo. 505, 111 S. W. 574, 17 L. R. A. (N. S.) 994; Hodgson v. Cheever, 8 Mo. App. 318; Citizens' Bank of Humphrey v. Fromholz, 64 Neb. 284, 89 N. W. 775; Sharp v. Citizens' Bank of Stanton, 70 Neb. 758, 98 N. W. 50; Bank of Commerce v. Harrison, 11 N. M. 50, 66 Pac. 460; Downes v. Phœnix Bank, 6 Hill (N. Y.) 297; Ft. Edward Nat. Bank v. Washington County Nat. Bank, 5 Hun (N. Y.) 605; In re Waldron, 28 Hun (N. Y.) 481; Payne v. Gardiner, 29 N. Y. 146; Pardee v. Fish, 60 N. Y. 265. 19 Am. Rep. 176; Howell v. Adams, 68 N. Y. 314;

But, particularly as Iowa is in the doubtful list, we refrain from counting this as any part of the ground of decision, and limit ourselves to holding that appellant has no rights even if the certificate of deposit is entitled to no greater credit than a merchant's dishonored promissory note.

Many of the cases that deny relief to a defrauded owner of commercial paper under circumstances like the present, ground the decision either on equitable estoppel or on the principle that where one of two must suffer the creator of the situation shall bear the burden. National Bank of Washington v. Texas, 20 Wall. 72; 22 L. Ed. 295; Baker v. Wood, 157 U. S. 212, 15 Sup. Ct. 577, 39 L. Ed. 677; Mitchell v. Roberts (C. C.) 17 Fed. 776; Bank v. Smith, 119 Ala. 57, 24 South. 589; Brewster v. Hartley, 37 Cal. 15, 99 Am. Dec. 237; Gilman v. Curtis, 66 Cal. 116, 4 Pac. 1094; Mohr v. Byrne, 135 Cal. 87, 67 Pac. 11; Silverman v. Bullock, 98 Ill. 11; Y. M. C. A. Gymnasium v. Bank, 179 Ill. 599, 54 N. E. 297, 46 L. R. A. 753, 70 Am. St. Rep. 135; Moore v. Moore, 112 Ind. 149, 13 N. E. 673, 2 Am. St. Rep. 170; Jefferson v. Bank, 143 Iowa, 83, 120 N. W. 308; Fox v. Bank, 6 Kan. App. 682, 50 Pac. 458; Mendelsohn v. Blaise, 52 La. Ann. 1104, 27 South. 707; Connell v. Bliss, 52 Me. 476; Eversole v. Maull, 50 Md. 95; Dickey v. Bank, 89 Md. 280, 43 Atl. 33; Gardner v. Beacon Trust Co., 190 Mass. 27, 76 N. E. 455, 2 L. R. A. (N. S.) 767, 112 Am. St. Rep. 303, 5 Ann. Cas. 581; Baker v. Burkett, 75 Miss. 89, 21 South. 970; Hill v. Shields, 81 N. C. 251, 31 Am. Rep. 499; Parker v. Stallings, 61 N. C. 590, 98 Am. Dec. 84; Wilson v. Little, 2 N. Y. 443, 51 Am. Dec. 307; Proctor v. M'Call, 2 Bailey (S. C.) 298, 23 Am. Dec. 135; Kempner v. Huddleston, 90 Tex. 182, 37 S. W. 1066; Reardan v. Cockrell, 54 Wash. 400, 103 Pac. 457.

[2, 3] But we believe that the true ground is this: An indorsement of a negotiable instrument to a named indorsee has two aspects. In one, it is a contingent contract of debt as complete and definite as if the terms thereof were written out in full above the indorser's signature; and in the other, it is a conveyance to the indorsee of the legal title to the instrument considered as a species of property—as perfect a conveyance as is the ordinary bill of sale of the ordinary

Boughton v. Flint, 74 N. Y. 476; Thomson v. Bank of British North America, 82 N. Y. 1; Munger v. Albany City Nat. Bank, 85 N. Y. 580; Smiley v. Fry, 100 N. Y. 262, 3 N. E. 186; In re Cook, 86 App. Div. 586; 83 N. Y. Supp. 1009; Girard Bank v. Penn Township Bank, 39 Pa. 92, 80 Am. Dec. 507; Finkbone's Appeal, 86 Pa. 368; McGough v. Jamison, 107 Pa. 336; Humphrey v. Nat. Bank of Clearfield, 113 Pa. 417, 6 Atl. 155; In re Gardiner Estate, 228 Pa. 282, 77 Atl. 509, 29 L. R. A. (N. S.) 685; Smith v. Steen, 38 S. C. 361, 16 S. E. 1003; Tobin v. McKinney, 15 S. D. 257, 88 N. W. 572, 91 Am. St. Rep. 694; First State Bank of Seminole v. Shannon (Tex. Civ. App.) 159 S. W. 398; Bellows Falls Bank v. Rutland County Bank, 40 Vt. 377; Koelzer v. First Nat. Bank, 125 Wis. 595, 104 N. W. 838, 2 L. R. A. (N. S.) 571, 110 Am. St. Rep. 890, 4 Ann. Cas. 1144. Contra: Wright v. Paine, 62 Ala. 340, 34 Am. Dec. 24; Brummagin v. Tallant, 29 Cal. 503, 89 Am. Dec. 61; Rentchler v. Kunkelman, 17 Ill. App. 343; Hunt v. Devine, 37 Ill. 137; Mereness v. First Nat. Bank, 112 Iowa, 11, 83 N. W. 711, 51 L. R. A. 410, 84 Am. St. Rep. 318; Thompson v. Farmers' State Bank (Iowa) 140 N. W. 877, 44 L. R. A. (N. S.) 550; Mitchell v. Easton, 37 Minn. 335, 33 N. W. 910; Baker v. Leland. 9 App. Div. 365, 41 N. Y. Supp. 399; Curran v. Witter, 68 Wis. 16, 31 N. W. 705, 60 Am. Rep. 827.

chattel. Concerning the indorser's liability on his contingent contract of debt, the maturity of the instrument may or may not be important. As to the validity of the indorser's conveyance of the legal title, the maturity of the instrument. is inconsequential. And so in this case, inasmuch as appellee is not counting on appellant's contingent contract of debt but is only asking him to respect, his conveyance of the legal title, the principle applies, which is common to the law of all kinds of property, that the innocent purchaser of the legal title is protected against secret equities respecting the title.

III. In addition to denying appellant relief under his bill, the court included in the amount to be paid by appellant in order to entitle him to redeem $2,913.44 expended by appellee for attorneys' fees and costs in defending itself against a suit by the trustee in bankruptcy of Prince's estate to recover an alleged unlawful preference given by Prince to appellee.

[4] That defense was not undertaken at appellant's instance. The allowance is sought to be justified under the rule that a pledgee may charge against the property the expenses reasonably incurred in its care and preservation. But the pledged property was safe in appellee's vaults, and the trustee in bankruptcy was not asserting any adverse right with respect to the pledge. It is true that, if the trustees had succeeded, the amount of appellee's claim against Prince, secured by the collaterals, would have been enlarged, and so appellant incidentally profited by the trustee's defeat; but the collaterals cannot properly be made to pay the expense of appellee's litigation, for its own purposes, over the state of its account with Prince. Willard v. White, 56 Hun, 581, 10 N. Y. Supp. 170; Work v. Tibbits, 87 Hun, 352, 34 N. Y. Supp. 308; Story on Bailments, sec. 306a.

The decree is modified by striking therefrom the aforesaid item of expense, and as modified is

Affirmed.