NEW HAMPSHIRE SAVINGS BANK *v.* NATIONAL ROCKLAND BANK *& a.*

*Sulloway, Piper, Jones, Hollis & Godfrey*, for the plaintiff.

*Robert W. Upton* (by brief and orally), for the defendant executor.

*Alvin A. Lucier* (by brief and orally), for the defendant bank.

JOHNSTON, J.   The trial Court correctly ruled that the defendant National Rockland Bank had the burden of proving its claim that it has a valid pledge of property of the defendant estate to secure the loans of Blanche E. Thompson.   The Court found that at the time of the pledge Mrs. Ella J. Thompson "was competent to transact this business."   This finding as well as others was excepted to on the ground that the Court did not find and report all material facts and

all rulings of law but merely stated a conclusion. The duty of a Superior Court judge under R. L., *c.* 370, *s.* 13 has been stated in *Oullette* v. *Ledoux*, 92 N. H. 302, 303 as follows: "If the conclusions on the issues of fact on which the decision is based are reported, it is enough. These conclusions have been found or are necessarily implied by the decree. No question of requests for special findings is here presented." Of course, when a request is made, essential findings supporting the decision should be reported, just as essential instructions on the law applicable should be given a jury. No exception can be taken to the failure to find what has not been specifically requested in regard to the particular issue or fact on which a finding is desired. Also, findings necessary to sustain the decree will be implied unless there are express findings inconsistent therewith. In the case cited it was held that a finding that one was "not mentally competent" satisfied the requirements of R. L., *c.* 370, *s.* 13, since there was no specific request involved.

The evidence is conflicting on the issue of the mental competence of Mrs. Ella J. Thompson in July of 1936. At that time she was 84 years of age. Left a widow in 1913, she carried on her husband's shoe store in Concord where she lived. After a while the business was conducted jointly by herself and the second husband of Blanche E. Thompson until Mrs. Ella J. Thompson sold her interest in 1930. She lived alone except that for some years prior to the transactions under consideration the daughter-in-law spent several days each week with her. The older woman regarded the younger as her daughter, was very fond of her and trusted her with financial matters, such as paying bills and drawing money from the banks. She gave her possession at times of bank books, deeds and other papers. The older Mrs. Thompson attended to her affairs with prudence with the possible exception of certain matters in which Blanche played a part. She paid her bills and her orders were always honored at the banks. When her deposition was taken June 7, 1939, she showed appreciation of the amount of the loans made by the defendant bank, some idea of the amount of her property and a good knowledge of her relations with Blanche. By her will executed November 25, 1932, she left one third of the residual share of her estate to Blanche. It cannot be said that no reasonable person could find from the above and other evidence that Mrs. Ella J. Thompson was mentally competent at the time of the pledge.

It is not disputed that the signatures to the withdrawal order and to the pledge agreement are those of Ella J. Thompson. In the

Court's finding that she authorized the pledging of her bank book to secure the loans, it is necessarily implied that she voluntarily delivered the book, order and agreement to the daughter-in-law. There is evidence from which such delivery could be found. Mrs. Blanche Thompson at her death had possession of bank books of the older woman; she had them repeatedly when she was entrusted to draw money from the banks. With the books of course went withdrawal orders signed by Ella J. Thompson. There was no object in signing the pledge agreement addressed to the National Bank unless it was to be delivered, and upon the evidence Blanche Thompson was the natural person to make such delivery. Such agreement clearly provided for the pledging of some property of the signer to said bank, if it is to be given any meaning at all.

It is unnecessary to decide whether there is evidence to justify the finding that the testatrix authorized the pledge of the N. H. Savings Bank book for loans to Blanche and for sums totaling $9,432.64, each specifically. If she was equitably estopped from denying these facts, the defendant National Rockland Bank is entitled to prevail. If an owner of property gives a third person apparent authority to dispose of it by pledge or other means, he will be estopped from denying such authority as against one who has given value in good faith in reliance upon it. Of course mere possession of tangible property does not give such apparent authority. There must be some indications of title or authority. In the present case not only was possession of the bank book given but also an order on the appropriate bank signed by the owner and an agreement signed by the owner of the book and directed to the appropriate bank providing for the pledge of some property of the signer. Under these circumstances the owner of the bank book was estopped to deny that she authorized the one to whom she delivered the indications of authority to pledge the book, provided the pledgee acted in good faith. It was the neglect of the owner in failing to fill in the amount of the order and a description of the property and the name of the borrower on the agreement that enabled the pledgeor to do as she did if she was not in fact authorized.

In *Howison* v. *Bank*, 88 N. H. 31, the owner of a certificate of stock, which is not a negotiable instrument, was estopped to deny that he authorized a pledge of the stock where he endorsed the certificate in blank and delivered it to one as trustee, who wrongfully transferred the stock as security for his own debt. The court called attention to the familiar principle that where one of two innocent

persons must lose because of the conduct of a third, the one who enabled the third person to bring about the loss, must suffer if the other party acted in good faith to his detriment. In *Drew* v. *Kimball*, 43 N. H. 282, an owner of cattle was estopped to deny ownership when he not only gave possession to another but also authorized that other to represent that the cattle were his property. *Nixon* v. *Brown*, 57 N. H. 34, is an instance of estoppel to claim ownership where another was given possession of a horse and entrusted with a bill of sale in the name of himself. In a discussion of the making of offers, Professor Williston considers the subject of entrusting to a third person a blank bond which the latter completes and delivers to an innocent obligee. He holds that the maker is estopped and says: "Such estoppels have more generally been applied to negotiable paper, than to other writings, but seem fairly applicable to the latter." 1 Williston, Contracts (Rev. *ed.*), *s*. 35.

"Estoppel may arise from intrusting another with an instrument executed or indorsed in blank or in which blanks are left to be filled." 19 Am. Jur. 701. In support of this statement several cases are cited. *Butler* v. *United States*, 21 Wall. (U.S.) 272, involves the printed form of a bond. *Majestic Loan Co.* v. *Edmondson*, 172 Okla. 222, was the case of a release signed in blank. A certificate of indebtedness of a corporation issued by a receiver and transferable on the books of the company was the subject matter of *McCarthy* v. *Crawford*, 238 Ill. 38. Whether the third person does or does not fill in the blanks before delivery to the one claiming the estoppel is immaterial except on the question of good faith.

As pointed out in *Howison* v. *Bank, supra*, it is essential to establish estoppel that the defendant bank be shown to have acted in good faith. On this point the Court found that the National Rockland Bank made the loans in good faith, that there was nothing to put it on inquiry and that in taking the collateral in the form presented it acted in accordance with the well-established custom prevailing in banks of its nature in Massachusetts. There was evidence to support these findings. Mr. Hartshorn testified: "The general practice then and now and prior to then was to accept a withdrawal order and the authorization to hypothecate the book signed by the owner, provided that it came from a person of good repute and known to the bank. If it was a perfect stranger that walked in, of course, we would not consider the thing, but those things are signed in blank, if you want me to explain a little more on this, for the reason invariably a person will pay a loan off and then come in

three months later and borrow a different amount, and that is the reason they are signed in blank, to save bookkeeping." It is objected that this practice of Massachusetts banks was unknown to Mrs. Ella J. Thompson. Estoppel does not rest upon the elements of a contract. The significance of the custom is that it substantiates the finding of good faith upon the part of the pledgee.

Evidence was introduced of the probate of the will of Ella J. Thompson executed November 25, 1932, and of two codicils made April 26, 1935, and April 14, 1938, respectively. The final ruling of the Court was that this evidence was allowed as to the codicils only and for the limited purpose of showing an admission of the executor that he considered the testatrix mentally competent when the codicils were made. It is true that the application of William A. Foster for the allowance of the codicils was made prior to his appointment as executor. However it was a duty of the executor although necessarily performed before he legally became such. The act was properly in evidence as an admission. It does not clearly appear as in *Doe* v. *Lucy*, 83 N. H. 160, that any finding of the trial Court was based upon incompetent evidence. It must be assumed as stated in that case that a trier of fact can ordinarily rid his mind of any impression produced by matters not properly in evidence.

*Exceptions overruled.*

All concurred.