# King *v.* Mellon National Bank of Pittsburg, Appellant.

*Bailment—Pledge of stock—Antecedent debt—Innocent purchaser—Fraud.*

Where an owner of certificates of stock signs a blank transfer and power of attorney on the back of each certificate, and delivers them to a firm of brokers to be sold, and the brokers instead of selling them hand them over to a bank in substitution of collateral previously pledged for an antecedent debt of their own, the bank is entitled, upon the failure of the brokers, to hold the certificates as against the owner, on the ground that the giving up of the collateral previously pledged was a consideration for the pledge of the certificates, and the bank was therefore an innocent holder for value to the extent of such consideration given in exchange.

Argued Nov. 4, 1909. Appeal, No. 210, Oct. T., 1909, by defendant, from decree of C. P. No. 3, Allegheny Co., Aug. T., 1908, No. 648, on bill in equity in case of Rachel A. A. King *v.* Mellon National Bank of Pittsburg. Before FELL, BROWN, MESTREZAT, POTTER, ELKIN and STEWART, JJ. Reversed.

Bill in equity to compel the surrender of certain certificates of stock and for an account. Before MILLER, J., specially presiding.

The facts are stated in the opinion of the Supreme Court.

The court entered a decree directing proceeds of sale of the stock to be paid to plaintiff.

*Error assigned* was the decree of the court.

*Samuel McClay,* of *Reed, Smith, Shaw & Beal,* with him, *Wm. M. Robinson,* for appellant.—Collaterals taken in exchange for other collaterals are taken for value to the extent of the consideration given in exchange: Midland Nat. Bank v. Missouri Pac. Ry. Co., 132 Mo. 492 (33 S. W. Repr. 521); Cherry v. Frost, 75 Tenn. 1; Depeau v. Waddington, 6 Whart. 210; Goodman v. Simonds, 61 U. S. 343; Ayrault v. McQueen,

32 Barb. 305; First Nat. Bank v. Bentley, 27 Minn. 87 (6 N. W. Repr. 422).

*H. K. Siebeneck,* with him *Warren I. Seymour* and *H. H. Patterson,* for appellee.—The acceptance of stock pledged as collateral security for notes given in consideration for pre-existing indebtedness does not constitute the pledgee such a purchaser for value as to preclude the owners of the stock from reclaiming it if it was procured from them by the fraud of the pledgor: Callendar v. Kelly, 190 Pa. 455; Linnard's App., 2 Sadler, 195; Weaver v. Barden, 49 N. Y. 286; Ashton's App., 73 Pa. 153; Gould v. Loan & Trust Co., 23 Hun, 322; Cleveland v. Bank, 16 Ohio, 236; Schuster v. Jones, 22 Ky. Law Repr. 568 (58 S. W. Repr. 595); Moodie v. Bank, 33 Leg. Int. 400; Pratt's Appeal, 77 Pa. 378; Royer v. Bank, 83 Pa. 248; Cummings v. Boyd, 83 Pa. 372.

OPINION BY MR. JUSTICE BROWN, January 3, 1910:

This bill was filed to compel the Mellon National Bank of Pittsburg to surrender to the complainant three certificates of the capital stock of the Pittsburg Trust Company and for an accounting of dividends received thereon. The complaint of the appellee is that the thirty-two shares of stock for which she held the three certificates were her property and were unlawfully pledged to the bank by Whitney & Stephenson, a firm of brokers, as collateral security for their indebtedness to it. There is no dispute about the facts upon which the decree in her favor was made. In 1903 she was the owner of the stock in controversy, and the same stood in her name on the books of the Pittsburg Trust Company. She delivered her certificates to Whitney & Stephenson that they might sell the stock when the market price reached $900 per share. In delivering the certificates to them she signed the blank transfer and power of attorney on the back of each. Whitney & Stephenson were a reputable firm of brokers at the time they received the certificates, and continued to be of good repute until they were adjudged bankrupts in December, 1907. On June 30, 1906, they borrowed from the appellant $50,000 on their promissory note,

payable on demand, securing the same by the deposit of various collaterals. The collateral clause in the note provided that the collaterals deposited should be held by the bank as security not only for the payment of the note of that date, but for all other indebtedness or liability of the makers, "whether absolute or contingent as maker or endorser, drawer or acceptor, now existing, or which may hereafter be contracted or incurred." At that time the bank held two demand notes which they had procured from Whitney & Stephenson, the one dated April 13, 1903, for $48,000, upon which they were makers, the other dated May 7, 1906, for $50,000, upon which they were indorsers. Each of these notes was secured by the deposit of various collaterals, the collateral clause in each being similar to that in the note of June 30, 1906. On March 23, 1907, Whitney & Stephenson procured from the bank the return to them of 200 shares of Pittsburg Plate Glass Company stock and 100 shares of Penn Iron & Coal Company stock, which had been deposited by them on June 30, 1906, as collateral security under the collateral clause in their note of that date. This stock was their absolute property. In lieu of it they delivered to the bank the thirty-two shares of Pittsburg Trust Company stock which had been left with them by the appellee, sixty-seven shares of Central District & Printing Telegraph Company stock and $2,500 in cash. The value of the securities returned by the bank to Whitney & Stephenson was about equal to what was substituted for them. The bank subsequently—in October and November, 1907—became the holder of four notes aggregating $11,500, upon which Whitney & Stephenson were liable as makers or indorsers. Two of these notes, for $5,000 each, dated October 3, 1907, upon which they were makers, were secured by collaterals. The other two, upon which they were indorsers, were not so secured. Whitney & Stephenson were adjudged bankrupts in December, 1907, and by authority of the United States district court the bank was authorized to expose to sale the collaterals pledged with the five notes, with the exception of the stock claimed by the appellee. The amount realized from the sale of these collaterals on July 2, 1908, was $120,469.85.

The amount due the bank by Whitney & Stephenson at that time was $140,123.90, leaving a balance unpaid of $19,654.05, with interest from June 22, 1907. Subsequently, under the authority contained in the collateral note of June 30, 1906, and with the approval of the United States district court, the bank sold at public auction the thirty-two shares of stock claimed by plaintiff for $12,640, her attorney becoming the purchaser of it. The amount realized from the collateral deposited with the note of June 30, 1906, exclusive of the plaintiff's stock, exceeded the amount due on that note. The amount realized from the sale of the collaterals pledged for the notes of April 13, 1903, and May 7, 1906, fell short by about $19,000 of the balance due on them, which was reduced by the price received for plaintiff's stock to about $7,000. If the decree directing the appellant to pay to the appellee the amount realized from the sale of her stock stands, the appellant will be short about $19,000, with interest, and, with the decree reversed, allowing it to retain the proceeds of the sale of the stock, there will still be due it about $7,000.

The first legal conclusion of the court below was that, if complainant's stock was needed to pay the note of June 30, 1906, she must bear the loss, and that, under the terms and conditions of the collateral clause in that note, loss must fall upon her if her stock, or any portion of it, was needed to pay the indebtedness of Whitney & Stephenson to the bank incurred subsequently to June 30, 1906. The authorities relied upon to sustain this correct conclusion are: Shattuck v. American Cement Company, 205 Pa. 197; Ryman v. Gerlach, 153 Pa. 197; Pennsylvania Railroad Company's Appeal, 86 Pa. 80. When the complainant left her stock with Whitney & Stephenson, with her signature attached to each blank transfer and power of attorney, for the purpose of enabling them to sell it, she clothed them with all the indicia of ownership, and against anyone who might have taken or purchased the stock from them for value she could set up no right or equity which she might have against them. Anyone to whom they might have delivered the stock for value, in the ordinary course of business, would have an absolute title to it, but, conceding

this to be so, the contention of the appellee, sustained by the court below in its second conclusion, is that her stock was not made liable on March 23, 1907, for the indebtedness of Whitney & Stephenson on the notes of April 13, 1903, and May 7, 1906. The reason given by the learned judge for this conclusion is: "But, Linnard's Appeal, 2 Sadler, 195; Ashton's Appeal, 73 Pa. 153, and the cases there cited; and Callendar v. Kelly, 190 Pa. 455, have established the well-settled rule in this state that a creditor who takes chattels, notes, or other choses in action as security for a pre-existing debt, is not a purchaser for value, as against the real owners. The value parted with by the bank on June 30 was $50,000 in consideration of the collateral that day received; the value it parted with on the two antecedent debts, namely, April 13, 1903, and May 7, 1906, was not directly or indirectly in consideration of the collateral pledged either on June 30, 1906, or March 23, 1907; as against the plaintiff the rightful owner of the stock, the pledgee's right for payment of the antecedent debt must fall; the equities existing between both, equally innocent, estop the pledgee from benefit when the antecedent debts were not based upon any value subsequently given, at the time the security was pledged. This is not only the doctrine of this state, but prevails in other jurisdictions, inter alia, in Cleveland v. Bank, 16 Ohio, 236; Weaver v. Barden, 49 N. Y. 286; National Trust Company v. Gray, 12 Court of Appeals, D. of C. 276; People's Savings Bank v. Bates, 120 U. S. 566."

If the stock of the appellee had been taken by the appellant on March 23, 1907, merely as collateral security for the pre-existing indebtedness of Whitney & Stephenson, evidenced by the notes of April 13, 1903, and May 7, 1906, and nothing more appeared in the case, innumerable authorities would support the view of the court below that such indebtedness was not protected by it, for when a creditor accepts from his debtor collateral security for pre-existing indebtedness, without giving any additional consideration for it, he gets something for nothing, and, although it may be of value, as he gave nothing for it, he is not to be regarded as an innocent holder for value against the real owner of what was so pledged to him,

even though the pledgor deposited it with all the indicia of ownership in himself. When so received by a creditor, and he insists upon retaining it against the real owner as security for the payment of indebtedness that had been created before he received it, the law sustains the contention of the real owner that, as he gave nothing for it, he cannot keep it. But this is not the situation here presented. Very much more appears. The bank gave up for the stock claimed by the appellee valuable securities belonging to Whitney & Stephenson, which they had pledged to it on June 30, 1906, as security not only for the payment of the indebtedness that day created, but as additional security for their other indebtedness then existing on the two notes previously procured from them by the bank upon which they were makers or indorsers. That the bank could have held the surrendered securities—the 200 shares of Pittsburg Plate Glass Company stock and the 100 shares of Penn Iron & Coal Company stock—not only to secure the payment of the note of June 30, 1906, but of the notes of April 13, 1903, and May 7, 1906, is not to be questioned, for these stocks were the absolute property of Whitney & Stephenson, and, for a valuable consideration moving to them, on June 30, 1906, they pledged them, their absolute property, as collateral for the note of that day and for the two prior notes. When, therefore, the bank surrendered these securities to Whitney & Stephenson at their instance and request, what it took in place of them it took as an innocent purchaser. It gave value for value, with nothing to put it on inquiry as to the right of Whitney & Stephenson to treat the certificates for the thirty-two shares of stock as their own property. It sold part of the protection it had for the three notes and received in exchange similar protection for those notes from parties clothed with all apparent authority to make the exchange. The appellant simply asks that what it took in exchange for securities, with admitted liability impressed upon them, shall, under the circumstances, be impressed with the same liability. The conditions under which the bank received the stock claimed by the appellee appear in the following finding of fact, to which no exception has been taken: "That said thirty-two

(32) shares of stock of the Pittsburg Trust Company, and sixty-seven (67) shares of stock of the Central District & Printing Telegraph Company were accepted by the Mellon National Bank, and the two hundred (200) shares of stock of the Pittsburg Plate Glass Company, and one hundred (100) shares of stock of the Penn Iron & Coal Company were surrendered by it to Whitney & Stephenson in the usual course of business, and without any knowledge on the part of the Mellon National Bank, directly or indirectly, of the claim of ownership of Rachel A. A. King, plaintiff in this case, to the said thirty-two (32) shares of stock of the Pittsburg Trust Company, and the Mellon National Bank had no knowledge of any such claim until January 20th, 1908, long after the said Whitney & Stephenson were adjudicated bankrupts in the District Court of the United States for the Western District of Pennsylvania."

From all that appeared from the three certificates when they were delivered to the appellant the appellee may have signed the blank transfers on the very day they were delivered, and, under the circumstances, the bank must be regarded as a holder of the stock for value, clothed with the right to put it to exactly the same use to which the surrendered securities could have been put. While certificates of stock transferred in blank may not be regarded as strictly negotiable instruments they are, nevertheless, in the position of merchandise prepared for market by the owner, and pass by delivery. The stock of the appellee so passed to the appellant. "Collaterals taken in exchange for other collaterals are taken for value to the extent of the consideration given in exchange. This is the rule where collaterals for a pre-existing debt are not regarded as taken for value. When old collaterals are surrendered and others taken in their place, the creditor in fact pays a consideration for the new securities, and the extent of that consideration is the value of the securities surrendered:" Jones on Pledges and Collateral Securities, sec. 470. "The exchange or substitution of other securities for those originally delivered as collateral, has no effect upon the rights of the pledgee, as founded upon the original contract. The surrender

of the securities originally deposited is a valuable consideration for the giving of the new securities, and the pledgee is as to the latter a holder for value, in the usual course of business:" Colebrooke, Collateral Security, sec. 15. For the deception practiced by Whitney & Stephenson upon the appellee the appellant is not to suffer. She gave her faithless brokers the means of doing the wrong complained of, and she, and not the bank to which her stock passed as an innocent purchaser for value, must bear the consequences of her own act: Bank of Kentucky v. Schuylkill Bank, 1 Parson's Eq. 180.

The decree of the court below is reversed and the bill is dismissed, the costs below and on this appeal to be paid by the appellee.