## Corbe *v.* Burkert; Appellant.

*Principal and agent—Bailment—Exchange of bonds—Fraud of agent.*

1. Where the owner of five county bonds payable to the original subscriber by name, or his assigns, desirous of exchanging them for one borough bond of the aggregate amount of the county bonds, delivers them to his agent, and receives a receipt which states that the bonds are to be exchanged for a borough bond, the transaction is a bailment, and the delivery need not be evidenced by a written assignment.

2. Where in such a case, the agent takes the bonds to a bank and substitutes them for a county bond which he had deposited as collateral security for a loan of his own, but does not deliver the latter bond to his principal, and the bank without the knowledge of the real ownership of the substituted bonds subsequently sells them after a default by the agent in the payment of his debt, neither the bank nor those who innocently purchased the bonds from it, will be compelled by a court of equity to surrender the bonds to the person who had delivered them to his agent for the exchange.

3. In such a case the owner's loss arose solely from the fact that the man whom he trusted to dispose of his bonds, after having done so in accordance with his directions, had absconded and converted to his own use the property resulting from that disposition.

Argued Dec. 8, 1909. Appeal, No. 98, Oct. T., 1909, by defendants, from decree of C. P. Schuylkill Co., July Term, 1905, No. 10, on bill in equity in case of Joseph Corbe v. E. P. Burkert, Citizens' National Bank of Ashland, Charles A. Weidman, Richard Price, Anthony Dougherty and Schuylkill County. Before RICE, P. J., HENDERSON, MORRISON, ORLADY, HEAD, BEAVER and PORTER, JJ. Reversed.

Bill in equity to compel the surrender of bonds.

The bill averred that on May 1, 1905, the complainant was the owner of five Schuylkill county bonds of $100 each. That on that day he delivered the same to C. O. Burkert, who is now a fugitive from justice, to have them exchanged for one Pottsville bond of $500 at four per cent.

It further averred that C. O. Burkert fraudulently attempted to sell and did deliver possession of the bonds to some of the defendants, and that he had no power of attorney or indicia of ownership to sell, pledge, or assign these bonds for other securities.

The facts appear by the opinion of the Superior Court.

SHAY, P. J., entered a decree in accordance with the prayer of the bill.

*Error assigned* was the decree of the court.

*Walter G. Treibly* and *William C. Devitt,* for appellants.—If Corbe's agent and attorney were not authorized to make the exchange, it would have been Corbe's duty to repudiate the act promptly. Not having done so and having acted in affirmance of Burkert's act, he cannot now repudiate it: Standard Leather Co. v. Allemannia Fire Ins. Co., 224 Pa. 186.

The question of an equitable assignment, and the authorities recognizing that a valid gift of nonnegotiable instruments may be made by delivery of them to the donee without assignment or indorsement in writing, seems to have been overlooked or ignored by the learned court: Licey v. Licey, 7 Pa. 251; Bunting v. Camden & Atlantic R. R. Co., 81 Pa. 254; Com. v. Compton, 137 Pa. 138; Fett's Est., 39 Pa. Superior Ct. 246.

*Edmund D. Smith* and *James F. Minogue,* for appellee.—Burkert did not become the owner of the county bonds by delivery to him. The change of ownership could be consummated only by the plaintiff or by his assignment of the bonds. A purchaser of the bonds from

Burkert was not without notice. The notice of ownership disclosed on the face of the bonds made inquiry a duty. Whether or not the notice so given was heeded by the purchaser, whether or not he discovered what might have been disclosed by inquiry the consequences to the purchaser are the same in law: Wood's App., 92 Pa. 379.

The appellee contends that this case is ruled by the principles announced in Robb v. Penna. Co., 3 Pa. Superior Ct. 254; Leiper's App., 108 Pa. 377; Shattuck v. American Cement Co., 205 Pa. 197; Wadlinger v. First National Bank, 209 Pa. 197.

OPINION BY HEAD, J., July 20, 1910:

The county of Schuylkill issued a series of bonds of the denomination of $100 each. These bonds were not made payable to bearer in the usual form of municipal bonds, but each was made payable to a particular individual named therein "or his assigns," pursuant doubtless to subscriptions made before the bonds were actually issued. Five of these bonds, after having been held by some intervening owners, came into the possession of Joseph Corbe, the plaintiff. Neither the names nor the number of the intervening owners appear in the record. The bonds were not accompanied with any former assignments showing the change of ownership as they passed from hand to hand. Although they were not strictly speaking negotiable, they appear to have been so regarded by those who dealt with them, to the extent at least that each purchaser seemed to have been content with his title when he paid for the bonds to the preceding owner and took them into his own possession. At all events it is conceded that Corbe, the plaintiff, although he had no assignment from the original payee, or any intervening owner, was in truth and in fact the legal owner of these five bonds at the time of the transaction which gave rise to this litigation.

For reasons satisfactory to himself, but not appearing in the record, Corbe became desirous of exchanging these five bonds, aggregating $500, for a single bond of the

borough of Pottsville of the same face value. The county bonds bore interest at the rate of three per cent per annum, whilst the borough bond was a four per cent one. Whether this was the cause that moved the plaintiff to desire the exchange, the record does not disclose and it is not material to our inquiry.

One C. O. Burkert, a member of the Schuylkill county bar, had for a number of years been the legal adviser of the plaintiff. To accomplish the object he had in view, already stated, the plaintiff turned over to his attorney Burkert his five county bonds with instructions to exchange them for one borough bond of the denomination and character above indicated. Of this fact there can be no doubt. It is testified to by the plaintiff himself and clearly evidenced by the following receipt given to the plaintiff and produced by him on the trial: "May 1, '05, Received of Joseph Corbe, five one hundred dollar county of Schuylkill bonds, to be exchanged for one borough of Pottsville four per cent. bond. C. O. Burkert, Atty." Here was a simple bailment. The bailor, the plaintiff, was the legal owner of the property bailed, and had the full right to do with it as he chose. He selected the bailee himself. The nature and purpose of the bailment are not matters of contention in the cause. They are established, as we have said, by the oral statement of the bailor and the written receipt of the bailee, given to and accepted by the bailor as a correct and satisfactory statement of the disposition to be made by the bailee of the property intrusted to him.

There is no statute in Pennsylvania which prescribes that such a contract of bailment should be evidenced by a writing or that any particular form of words should be used to validate the transaction. It is sufficient if the intention of the bailor and the use of the bailed property to be made by the bailee appear. More especially is this true when the transaction comes to be considered by a chancellor sitting in a court of equity. Such a court looks more to the substance of things than to their form. Even

in the days when courts were more inclined to rigidly cling to ancient forms than they have been in modern times, it was held, in an action concerning a railroad bond, that it might have been assigned in equity by a parol delivery: Bunting's Administrators v. Railroad Co., 81 Pa. 254. In Bond v. Bunting, 78 Pa. 210, SHARSWOOD, J., said, "It is certainly the tendency of all the modern authorities to maintain the general doctrine which may indeed be stated as a formula, that wherever a party has the power to do a thing—statute provisions being out of the way—and means to do it, the instrument he employs shall be so construed as to give effect to his intention." See also Fetts' Estate, 39 Pa. Superior Ct. 246.

Corbe then, the owner of the bonds when he turned them over to Burkert, had full power to authorize the latter to exchange them for any other form of securities he preferred to have. He certainly intended that the exchange we have already indicated should be effected by his bailee, for so he himself declares. Armed with this authority Burkert went to the Citizens' National Bank of Ashland, which bank held a bond of the borough of Pottsville as collateral security for a loan it had made to Burkert, the bailee. The latter arranged with the bank to surrender to him the desired borough bond and to accept as a substitute therefor the five county bonds, the possession of which he then and there turned over to the bank. If any authority be needed for the proposition that the bank took the same title to the new securities that it had to what it surrendered and that it was a holder of each in turn for value, to the extent of the consideration it had originally given, such authority will be found in the recent case of King v. Mellon National Bank of Pittsburg, 227 Pa. 22. With the actual delivery of the county bonds to the bank and the receipt of the borough bond by Burkert, the bailee, the latter had completed the precise obligation which, by his contract of bailment, he had expressly undertaken to perform. He had turned over to another, who was the lawful holder of a borough

bond, the five county bonds formerly owned by his principal. In doing this he divested the title of his principal to those bonds because without doing this he could not acquire for his principal the ownership of the borough bond which was the purpose of the entire transaction.

When therefore Burkert, the bailee, received into his possession the borough bond, which he was authorized to acquire for his principal, in whom did the title to that bond then and there vest? Had Burkert, the bailee, for any reason undertaken to assert title to himself in that bond as against his principal, under the facts stated, no court at law or in equity would have listened to such a claim. Again let us suppose, for illustration, that the five county bonds which Corbe formerly owned, and which he had by his bailee exchanged in the manner indicated, had been the obligations of a private corporation. If such corporation had suddenly become insolvent after its five obligations had been delivered to the bank, and after Burkert, the bailee, had in his possession the borough bond, thus closing the exchange, would it have been possible for the bank to shift the loss back to the shoulders of Corbe on the theory that the exchange had not been completed and it might therefore withdraw its consent to such a transaction?

Almost immediately after the receipt by him of the borough bond Burkett advised his principal of the fact that he had made the exchange and was ready to turn the bond over. There is no room in the record for any doubt as to the all important fact that at that time Burkert actually had received the bond into his possession. He made some excuse for his inability to then deliver the bond, but promised to do it on his next meeting with his principal. Unfortunately for the latter, his trusted man of business abused his trust and shortly thereafter absconded, having, so far as this record shows, taken with him or otherwise converted to his own use the bond of the plaintiff. In the meantime, through the efforts of the bank officers or of Burkert himself, or both, the county

bonds, which stood as collateral for the debt of Burkert in the bank, were sold to the other defendants named in the bill, each one of whom in good faith paid full value therefor.

The plaintiff by this bill sought to set aside the entire transaction and restore himself to the position he occupied before he turned his bonds over to Burkert and authorized and directed him to exchange them. The learned court below upon final hearing entered a decree that the plaintiff was still the lawful owner of the five county bonds, and the several defendants who had subsequently purchased them in the manner stated were enjoined and required to surrender them to the plaintiff and to pay the costs of the proceeding.

After an attentive consideration of the entire question we are unable to see that there is any solid foundation of law or fact upon which this decree may rest. It was the plaintiff who selected the untrustworthy agent and gave to him his confidence and his property. He expressly authorized and intended him to do with that property the very thing which he did do, to wit, to transfer the ownership of it to another, and to acquire in consideration thereof the ownership of the security he preferred. All of this was done and the transaction was complete so far as the outside world was concerned. Up to that time no one had done any wrong, no one had committed a breach of trust or contract. The plaintiff's loss arises solely from the fact that the man whom he trusted to dispose of his property, having done so in accordance with his directions, absconded and converted to his own use the property resulting from that disposition. The plaintiff's situation, as we view it, is precisely the same as that of the plaintiff in the case of King v. Mellon National Bank, 227 Pa. 22. In that case the plaintiff intrusted to her brokers, Whitney & Stephenson, a certificate evidencing her ownership of thirty-two shares of stock of the Pittsburg Trust Company. The brokers did not dispose of her stock in accordance with her directions, but put it up

as collateral for a loan of their own in the hands of the defendant bank which had no knowledge whatever of the trust relation existing between the brokers and their principal. The brokers afterwards became insolvent and the plaintiff filed her bill to prevent the bank from selling the collateral and applying its proceeds to the extinguishment of its loan. In concluding the opinion reversing the court below, Mr. Justice BROWN used the following language which we think is entirely applicable here: "For the deception practiced by Whitney & Stephenson upon the appellee the appellant is not to suffer. She gave her faithless brokers the means of doing the wrong complained of, and she, and not the bank to which her stock passed as an innocent purchaser for value, must bear the consequence of her own act: Bank of Kentucky v. Schuylkill Bank, 1 Parsons' Eq. 180."

The decree is reversed and the bill is dismissed at the costs of the appellee.