FRANK WORK and Others, Respondents, *v.* DUDLEY TIBBITS,
Appellant, Impleaded with Others.

*Wrongful pledge of stocks — the pledgee cannot charge upon them a counsel fee
incurred in defending the validity of the transfer to him.*

The lawful owner of certain stocks, which had been wrongfully pledged to a
firm by a third person, brought a suit against the pledgees for the recovery of
the stocks in question. The pledgees answered setting up that they were
*bona fide* holders for value of the stocks, without notice of the title or interest
of the plaintiff. The action was then abandoned by the owner of the stocks.

In an action brought by the pledgees of the stocks to foreclose their lien, a claim
was made in their behalf for counsel fees and expenses incurred in the litiga-
tion brought by the owner against them.

*Held*, that the suit was not brought for the benefit of the pledgor, nor was the
defense undertaken in his behalf;

That there was no implied authority to defend in the pledgor's behalf, and that
the pledgees in defending acted solely for their own benefit, and that they were
entitled to no further reimbursement than the law generally affords to success-
ful litigants, namely, the costs in the action.

APPEAL by the defendant, Dudley Tibbits, from a judgment of
the Supreme Court in favor of the plaintiffs, entered in the office of
the clerk of the county of New York on the 1st day of March, 1895,
upon the decision of the court rendered after a trial at the New
York Special Term.

*Esek Cowen*, for the appellant.

*Charles Fox*, for the respondents.

PARKER, J.:

This suit was brought to foreclose a lien on certain stocks pledged
to the plaintiffs by Ogden, Calder & Co. There was found to
be due the plaintiffs under the contract of pledge the sum of
$34,930.07, which included $4,538.75 allowed for counsel fees and
expenses incurred in certain litigations in relation to the stocks
which were the subject of the pledge.

The controversy on this appeal relates solely to the latter item.
The defendant Tibbits, and not Ogden, Calder & Co., was the
real owner of the stocks at the time the contract of pledge was
entered into. And in pledging the stocks, as they did, to these

plaintiffs, they acted wrongfully, but of this fact these plaintiffs had no knowledge.

At the time of the commencement of this suit there were pending three actions against the plaintiffs, arising out of the transaction had by them with Ogden, Calder & Co., one of which was instituted by Tibbits.

In Tibbits' action plaintiffs answered, setting up that they were *bona fide* holders for value of the stocks mentioned in the complaint without notice of the title or interest of the said Tibbits. And such answer being interposed, the action was abandoned by the defendant Tibbits. It was in such action that plaintiffs incurred the counsel fees and expenses which are in dispute.

The pledgees were successful in that litigation because of superior equities growing out of the fact that Tibbits so left his stocks with Ogden, Calder & Co. as to give the appearance of ownership; an appearance that the pledgees had a right to rely on, and did.

This act, coupled with the wrongful doings of Ogden, Calder & Co., opened the way for the application of the equitable rule that where one of two innocent parties must suffer, the one whose neglect made possible the injury must bear the loss.

The defendant's title, therefore, did not avail him, and the abandonment of his action to recover the stocks probably resulted in a judgment for costs, which ordinarily measures all that the successful party may have by way of indemnity for counsel fees and expenses incurred in establishing his position through a judicial determination.

But the plaintiffs claim that in this case they can take out of the proceeds arising from the sale of the stock, of which Tibbits was the real owner, not only the amount loaned by them and the taxable costs recovered against Tibbits, but all the counsel fees incurred by them in establishing the priority of their equity over that of Tibbits.

They have no precedent directly in point for it, but claim to be within the rule which permits a pledgee to charge to the pledgor and deduct from the fund realized by the sale of the thing pledged, all necessary expenses incurred in clearing or defending the pledgor's title.

A distinction between such a case and this at once forces itself upon the attention, and that is that these plaintiffs have been allowed to deduct over $4,000 for expenses incurred, not in defend-

ing the pledgor's title, for he had none, but in defending the validity of the transfer to themselves.

The plaintiffs' pledgor did not have any title, and, therefore, they did not receive any from him. Nevertheless, they defeated Tibbits because he so acted as to put it in the power of his brokers to induce them to make a loan on the faith of the pledgor's ownership of the stock.

Such a defeat ordinarily carries against the defeated party, and in favor of the successful one, taxable costs, with perhaps an allowance. There seems to be no good reason why these plaintiffs should be more favored than the average suitor, nor why this defendant should be more severely punished for his neglect than the many who are called upon to respond to others in some manner for their carelessness.

None has been suggested certainly, and it is safe to assume that one would have been had the thoughtful examination of the counsel led to its discovery.

In such case the courts should not strain the rule affecting the reimbursement of pledgees for the purpose of bringing the plaintiffs' claim within it. And unless that be done plaintiffs' claim for the expenses of their litigation must fall.

The foundation rule is, that the pledgee after sale must credit the pledgor with the net amount realized by him from the proceeds of the pledge. If put to expense in order to protect the property pledged, compelled to pay an incumbrance to prevent foreclosure, or forced to defend the pledgor's title, the gross proceeds must be reduced to the extent of the expense incurred in the doing of one or all of these things, because done on behalf of the pledgor and for his benefit.

The property passes to the pledgee burdened with adverse claims against the pledgor, and but for the pledge the latter would be compelled to incur in the first instance the expense which devolves upon the pledgee by the contract of pledge.

What is done by the pledgee in such case is, therefore, for the benefit of the pledgor, and justifies the rule of law that the pledgee, upon whom has been shifted the burden of maintaining or defending the property pledged, shall have reimbursement out of the proceeds, turning over to the pledgor only what sum shall thereafter remain.

The decided cases to which our attention has been called, aside from those involving payment of incumbrances or expense incurred in preserving the property pledged, relate to expense incurred in vindicating the pledgor's title.

But in this case the pledgors did not have title to the stock pledged. In making the pledge they acted without right. What these plaintiffs attempted to accomplish was not to establish that their pledgor had title, but that plaintiffs were purchasers in good faith from them while they were in possession and clothed with apparent ownership, and, therefore, as against the real owners, were entitled to so much of the proceeds as should be required to satisfy the pledge.

The suit was, therefore, of no benefit to the pledgor, nor was the defense undertaken in such belief. Hence there was no implied authority to defend in the pledgor's behalf, and in defending the pledgees acted solely for their own benefit, and it would seem that they were entitled to no further reimbursement than the law generally affords to successful litigants.

The judgment should be reversed and a new trial granted, with costs to the appellant to abide the event.

VAN BRUNT, P. J., and O'BRIEN, J., concurred.

Judgment reversed, new trial granted, costs to appellant to abide event.