ARLE E. HAAS,
Plaintiff,

*vs.*

LEON V. HAAS, General Motors Corporation, a corporation of the
State of Delaware and GRACE HAAS,
Defendants,

CENTRAL BANK AND TRUST COMPANY, a banking corporation of the
State of Florida,
Intervening Defendant.

*New Castle, July 6, 1956.*

(1)

*Thomas Herlihy, Jr.,* and *Herman Cohen,* Wilmington, for plaintiff.

*Caleb S. Layton,* of Richards, Layton & Finger, Wilmington, for defendant General Motors Corp.

*James R. Morford,* of Morford & Bennethum, Wilmington, for intervening defendant.

Leon V. Haas and Grace Haas failed to appear and default judgments were entered against them.

SEITZ, Chancellor: This court previously ruled that the pleading of the intervening defendant, Central Bank and Trust Company ("Bank"), stated a claim entitling it to relief in the form of an equitable lien against certain General Motors stock certificates up to the full amount of its loss. See *Haas v. Haas,* 35 *DelCh.* 392, 119 *A.2d* 358.[1] Thereafter, the Bank amended its pleading, without objection,

---

1. In its original pleading the Bank claimed as absolute owner. Then at oral argument on the motion to dismiss its claim, the Bank without objection was permitted to change its claim to assert an equitable lien to the full extent of its loss because, as it then conceded, it never in fact purchased the shares.

to contend first that it was an actual purchaser or, alternatively, that it had an equitable lien on the certificates in the full amount of its loss, including interest and counsel fees. After plaintiff answered this pleading the Bank moved for summary judgment and this is the decision thereon. Plaintiff does not suggest that any material fact is in dispute.

The material facts in this case were summarized by this court in its first opinion. See *Haas v. Haas,* above. While there are some slight changes from the facts stated in the previous opinion, they are not important and have no bearing on the decision. I shall therefore repeat only those facts necessary to an understanding of the present decision.

Plaintiff-wife sued her husband ("Leon") and General Motors ("GM"). She sought to have title to 200 shares of GM stock reregistered in the name of plaintiff and Leon as joint tenants with the right of survivorship. The basis of her claim was that the interest in such stock was originally so held and was fraudulently changed by Leon to his own name by use of a stock power given by plaintiff to Leon for another purpose.

When this action was brought, the court issued an order restraining Leon and GM from transferring the certificates. However, Leon had already pledged the stock with the Bank as partial collateral for a $10,000 loan. The Bank had no knowledge of plaintiff's claim.

Leon, thereafter, and with notice of the restraining order, caused his loan to become deficient and directed the Bank to sell the entire 200 shares and satisfy the loan and deposit the balance in Leon's account in the Bank.[2] The Bank through its broker caused the stock to be "sold", and received the net amount of $18,996.76. After deducting the unpaid balance of the loan with interest ($7,021.88) the Bank deposited the balance ($11,974.88) in Leon's checking account. He promptly withdrew all but $192.34, which still is in that account.

The certificates were delivered to the purchasing broker and when it sought to have the transfer made, GM refused because of the

2. A default final judgment was entered against Leon.

restraining order. This was the first notice either the Bank or broker had that there was an infirmity in Leon's title. The Bank's broker was required to make good by delivery of other certificates. It returned the original certificates to the Bank which reimbursed it in the full amount of its loss, to wit, $19,038.91.

The Bank intervened in this case seeking to be declared the owner of the certificates with free right of negotiability or to have an equitable lien impressed thereon for the full amount of its loss. Plaintiff denies that the Bank should be treated as owner. She claims that anything beyond an equitable lien in the full amount of its loss would constitute unjust enrichment.

As stated in the previous opinion, the Bank's broker, although completely innocent, was required under Stock Exchange rules to replace the certificates when it was found that their negotiability had been affected by the restraining order. In such a case it was entitled to the status of a bona fide purchaser for value as to the certificates. However, the broker chose to return the "defective" certificates and to seek reimbursement from its customer. This, in my opinion, the broker was entitled to do. See *The Law of Stockbrokers and Stock Employees, Meyer,* §§ 112, 130(b). When the Bank reimbursed its broker under these circumstances I believe, as indicated in the previous opinion, that it then stood in the position of an assignee from a bona fide purchaser, at least up to the full amount of its loss.

But should the Bank be permitted to retain the certificates as owner without regard to the amount of its loss on the theory that it should also be treated as a bona fide purchaser for value? The Bank acquired notice of plaintiff's claim and the outstanding restraining order after the sale but before it reimbursed its broker. There was no purchase in fact by the Bank. Certainly the Bank can properly claim, through the broker, the benefit of the status of a bona fide purchaser for value up to the full amount of its loss. But it would be a perversion of that basically equitable principle to apply it in a way which would unjustly enrich the Bank, the gratuitous agent of the defrauding party, at the expense of the defrauded party. Here the protective cloak of bona fide purchaser covers the Bank only to the

extent of its loss. Neither justice nor commercial expediency requires more.

I conclude that the Bank's status of bona fide purchaser is limited to the amount of its loss, less the small balance in Leon's checking account. As indicated in the previous opinion, the Bank will be amply protected by the imposition of an equitable lien on the shares in that amount.

I next consider the Bank's claim for reimbursement of counsel fees.

> "We start with the general principle that, apart from statute or contract, a litigant must pay his counsel fees". *Maurer v. International Re-Insurance Corp.*, 33 *Del.Ch.* 456, 95 *A.2d* 827, 830.

However, either on the basis of implied right or express contract a pledgee may be entitled to be reimbursed for reasonable counsel fees expended to protect the pledged property, to prevent foreclosure or to defend the pledgor's title. See 40 *A.L.R.* at page 259.

Let us first consider whether the pledgee here is entitled to be reimbursed for counsel fees on the implied right theory. It should be noted here that the pledgee-Bank actually claims the stock on the theory that it is in the position of a bona fide holder for value. It does not and could not in view of the pledgor's fraud defend the lawsuit on the theory that the pledgor had a right to pledge the collateral in question. Consequently, the pledgee, by intervening here, is seeking to vindicate its own position. The Bank is therefore in a position analogous to that of any ordinary litigant. This was the conclusion reached by the New York Supreme Court, affirmed by the Court of Appeals, in the case of *Work v. Tibbits*, 87 *Hun* 352, 34 *N.Y.S.* 308, 310, affirmed 133 *N.Y.* 574, 30 *N.E.* 1149.

The court there said:

> "* * * But in this case the pledgors did not have title to the stock pledged. In making the pledge they acted without right. What these plaintiffs [pledgees] attempted to accomplish

was, not to establish that their pledgor had title, but that plaintiffs were purchasers in good faith from them while they were in possession and clothed with apparent ownership, and therefore, as against the real owners, were entitled to so much of the proceeds as should be required to satisfy the pledge. The suits were therefore of no benefit to the pledgors, nor was the defense undertaken in such belief. Hence, there was no implied authority to defend in their behalf, and, in defending, the pledgees acted solely for their own benefit, and it would seem that they were entitled to no further reimbursement than the law generally affords to successful litigants."

Compare *Wolf v. American Trust and Savings Bank, 7 Cir.* 214 F. 761.

 I now consider whether the Bank's right to reimbursement can be established on the basis of the provisions of the pledge agreement.

The note pursuant to which the stock here was pledged specifically authorized the pledgee, in case of default, to place the note with an attorney for collection, in which event the pledgor agreed to pay "all costs of collection, including a reasonable attorney's fee * * *". Subsequently, in the note it was provided:

"In case of sale [of collateral] from any cause, after deducting legal and other costs of collection, sale and delivery of said property, including attorney's fees as hereinbefore provided, the said Payee or the holder hereof may apply the residue of the proceeds of the sale or sales so made to pay this notice, and then to pay any and all of the liabilities of the undersigned to said Payee, * * *"

The provisions of the note dealing with counsel fees clearly were limited to fees necessary to the collection of the loan. They cannot be construed to cover legal services rendered the Bank to assist it in recovering losses incurred by it as a gratuitous agent. I think it reasonable to infer here that the Bank's legal fees would have been

minimal had the Bank only been claiming a lien on the stock in the amount of the unpaid portion of the loan.[3] Indeed, the plaintiff has never really denied that the Bank is entitled to be reimbursed up to the extent of the unpaid balance of its loan. The real dispute has concerned the Bank's right to recover so much of its loss as arose from its action in selling the portion of the stock which was in excess of that necessary to satisfy the loan. It is this situation which is not covered by the terms of the note dealing with the deduction of counsel fees. And it is this dispute which occasioned nearly all of the legal services for the Bank.

I therefore conclude that the note does not provide a contractual basis for reimbursing the pledgee-Bank for the legal services here involved. In reaching my conclusion I assume rather than decide that a fraudulent pledgor could contract in a way which would cover such expenses.

Finally, I consider the Bank's claim to interest. In the absence of contract or other special situations, interest in equity is generally not allowed until judgment is entered. Compare *Missouri-Kansas Pipe Line Co. v. Warrick*, 25 *Del.Ch.* 388, 22 *A.2d* 865. Here interest at 4½% was provided in the note but plaintiff contends that such provision is not applicable. It seems to me that the pledgee-Bank was entitled to continue to receive the stipulated interest on the unpaid balance of the loan, particularly since the pledgor was in default. I say this because the Bank, as to such unpaid balance, was itself directly in the position of a bona fide purchaser for value. If the bona fide purchaser concept is to have full meaning in this area, I believe that a corallary principle must be the right to recover unpaid interest in a situation such as this. I might also note that the restraining order obtained by the plaintiff applied to all the shares of stock. Consequently, the Bank has never been in a position where, by a sale of a portion of the stock, it could have stopped the accrual of interest on the unpaid balance of the loan.

I conclude that the Bank is entitled to the stipulated 4½% simple interest on the unpaid balance of the loan ($7,000) from the

3. I do not understand that the Bank's claim involves this limited type of claim and so it is not resolved.

date of default until the date of judgment. I cannot see how the Bank is entitled to interest on the balance of its loss in view of the manner in which such loss arose. Nor can I see any merit to plaintiff's argument that all interest should be denied because the certificates were deposited with the court. This is not the usual court custody case where the general "no interest" rule applies.

In view of the expressed desire of plaintiff to avoid the sale of all of the stock, the parties may submit to the court suggested mechanics for implementing this decision.

Order on notice.