**Arle E. HAAS, Plaintiff,**

v.

**Leon V. HAAS, Defendant.**

**Civ. A. Nos. 1757, 1794, 1808, 1838.**

United States District Court
D. Delaware.

Feb. 20, 1958.

Herman Cohen, of Cohen & Cohen, Wilmington, Del., for plaintiff.

Vincent A. Theisen, of Logan, Marvel, Boggs & Theisen, Joseph H. Flanzer, L. Robert Hopkins, and John P. Daley, Wilmington, Del., for defendant.

RODNEY, District Judge.

This matter is a confused and confusing consolidation, by agreement, of four actions—two being instituted in this Court by the husband and two instituted in Delaware Courts by the wife and removed to this Court. The jurisdiction of each is based on diversity of citizenship. The wife, Arle E. Haas, will be referred to herein as "plaintiff" and Leon V. Haas as "defendant". The parties, Leon V. Haas and Arle E. Haas, were respectively husband and wife living in or near Wilmington, Delaware. Trouble between them of a very serious nature developed about 1950 and culminated in a divorce in Little Rock, Arkansas on January 25, 1955, the validity of which is not here in issue. All four cases involve the respective claims of the parties to the property that the parties formerly owned as tenants by the entirety.

Before taking up the respective claims of the parties it seems advisable to state the general surroundings from which the claims arise and in which the contentions of the parties appear, although this course may be somewhat repetitious of the facts connected with the various claims.

The husband, Leon V. Haas, was a retired executive in comfortable circumstances. They sold a house they owned as tenants by the entirety to one Budner taking a mortgage as part consideration. This mortgage appears later in this statement of facts. They built another house on property owned by them as an estate by the entireties and in which they lived. On the same premises was located another building or log cabin for summer use but without heat, plumbing or other conveniences sufficient for use as a dwelling. On these premises they placed a mortgage with Equitable Trust Company.

During this time they maintained one or more checking accounts in their joint names and of substantial nature. About this time the Budners paid off some $4,000 or $5,000 on the mortgage held by Mr. and Mrs. Haas. Being unable to make this payment applicable to their

own mortgage given by them, the money was placed in a separate account allegedly for the purpose of making payment on their own mortgage when that would become possible.

One other fact is of importance. The parties owned at least one security being 200 shares of General Motors stock registered in the name of Leon V. Haas and Arle E. Haas with right of survivorship. This stock was pledged with Equitable Trust Company as security for a loan, the wife, Arle E. Hass, signing the certificate in blank and this fact has importance in the subsequent difficulties. The facts and conclusions as to this stock, constituting one of the larger claims of the plaintiff, will be hereafter considered with reference to the claims designated as 3(h), (i), (j) and (k).

About November 24, 1950 the husband left the house and largely depleted the bank accounts which had been in their joint names, both the individual accounts and that which represented the payment on the Budner mortgage. It is in evidence that the wife, too, had withdrawn two smaller sums for her own use and protection.

At or about the time the husband left the house he instituted a suit for divorce in the Superior Court of the State of Delaware. This suit was contested by the wife and after considerable delay was eventually denied and the wife was allowed her attorney's fee and some $400 for expert medical testimony. These allowances have some pertinency in view of her claims as hereinafter elaborated.

After the husband left the house, with every indication of permanancy of removal, the wife stayed in the larger house but being unable to maintain herself there rented the larger house. She then from her own funds, or funds borrowed for the purpose, installed heat, plumbing and other necessities in the smaller summer house and moved there and has since lived there. She took with her what furniture she desired, sold a small quantity and gave away a few pieces.

Shortly after the divorce case of the husband had been instituted in Delaware the wife brought non-support proceedings in the Family Court of the State of Delaware. The non-support action was not proceeded with owing to an agreement entered into between the counsel for both parties and evidenced by a letter from the counsel for the husband addressed to counsel for the wife. As this agreement covers several of the claims of the wife and counter contentions of the husband, it is here set out in extenso.

"North American Building
"Wilmington 7, Delaware
January 8, 1951
"Honorable Thomas Herlihy
"North American Building
"Wilmington 7, Delaware
"Dear Tom:
Re: Haas v. Haas
"This will confirm our understanding of today that Mr. Haas will pay the fuel, telephone, electric and gas bills, water, taxes and mortgage payments and in addition thereto will give Mrs. Haas $250 per month starting January 1, 1951.

"I would suggest that Mrs. Haas, through you, furnish me all the statements that she receives so that I may pay the same out of funds left with me. I will also furnish, through your office, each month the check of $250.

"It is understood that this arrangement will continue until the matter of the divorce is terminated or a definite property settlement agreement is reached.

"I assume that it will be sufficient for you to confirm this understanding by letter, however, if you desire a definite agreement, please advise me. In as much as the matter of temporary support will be taken care of, isn't it proper that the warrant be withdrawn in the Family Court.

"Please advise by Wednesday, as Mr. Haas desires to return to his sister's home Thursday.

"Very truly yours,
"/s/C. J. Killoran"
"CJK:LVH

The husband had supplied to his counsel certain funds (approximately $2,500) from which the sums mentioned in the foregoing letter were paid until the fund was exhausted.

About this time the Budners, who had purchased their house from Leon and Arle Haas, made certain stipulated annual payments on account of their mortgage and eventually desired to pay off the balance. Largely because of the inability of the present plaintiff and defendant to agree upon any basis whatever, the payments of the Budners were received by counsel for the parties and deposited in an "escrow fund" in the names of the counsel for both parties. From this fund certain agreed amounts were paid and from this escrow fund there was also paid the sums agreed to be paid to the wife under the support agreement after the fund deposited by the defendant had been exhausted. The payments specified in the agreement for support continued to be paid from the "escrow fund" until May 1953 when Mrs. Haas was of the opinion that what she considered was her own half of the "escrow fund" was being depleted and that she was in effect paying her support from her own money and she thereupon refused to receive any more payments from the "escrow fund". The parties were unable to agree as to any division or disposition of the balance of this fund, then amounting to $25,-882.95 and this sum was eventually paid into this Court and now remains in the Registry of this Court for equitable disposition in view of the varying claims.

On January 25, 1955, the husband having gone to Arkansas, a decree of divorce was granted on his application. No question is here raised as to the validity of that divorce.

The date of the Arkansas divorce, January 25, 1955, is an important date both in considering the change of interest of the parties with regard to the title to the real estate formerly held by them as tenants by the entirety and as fixing a date for the determination of some of the many claims made by the parties.

Arle E. Haas brought two actions in the Delaware Courts, (a) an action of sequestration in the Court of Chancery and (b) an action of foreign attachment. The purpose of each was to obtain a settlement of her claim against Leon V. Haas. Both actions were removed by the defendant, Leon V. Haas, and became respectively Civil Action No. 1794 and Civil Action No. 1808.

Leon V. Haas commenced an action in this Court (Civil Action No. 1757) against Arle E. Haas and against Clair J. Killoran and Thomas Herlihy, Jr., Trustees of the "Escrow Fund", hereinbefore mentioned, seeking the partition of the real estate formerly held by Leon V. Haas and Arle E. Haas as tenants by the entirety while they were married and also seeking a division of the escrow fund now paid into this Court.

Leon V. Haas also brought an action in this Court seeking an accounting by Arle E. Haas for certain rents received by her and of certain furniture retained by her.

These are the four actions which on a pretrial proceeding were consolidated for hearing.

From this tangled skein of facts the claims of the parties are made as herein set out and will be considered in their order.

The wife claims:

1. One half of the deposits in the escrow fund.

2. One half of the amount received from sale of real estate.

3. The wife claims a lien on the husband's interest in the proceeds of the sale of the real estate or of his interest in the escrow fund for the following claims.

(a) 20 payments for support at $250 from June 1953 to the date of divorce, January 1955.

(b) Payment of the items mentioned in the letter of Mr. Killoran from June 1953 to the date of divorce.

(c) Insurance premiums paid on the real estate from the last payment from the escrow fund to date of divorce.

(d) Expenditures for property maintenance prior to divorce.

(e) Amount paid by an insurance company.

(f) Cost and expenses in improving the properties Nos. 4704 and 4704(a) Washington Boulevard prior to divorce.

(g) Omitted medical expenses in Delaware divorce case.

(h) Loss of 108 shares General Motors stock.

(i) One half of the dividends received by Leon V. Haas on the General Motors stock.

(j) Counsel fee in action to recover General Motors stock.

(k) Value of General Motors rights to buy stock.

(l) One half of the expenses incurred on the property since the divorce for repairs, maintenance, mortgage, interest, taxes &c.

Arle E. Haas gives credit on her claim for one half of the rental received for the property since the divorce.

Leon V. Haas generally claims one half of the proceeds of the sale of the real estate and one half of the escrow fund in this Court; he also asks for an accounting of the rents received by Arle E. Haas and of the furniture retained by her.

Leon V. Haas also disputes all or most of the claims by Arle E. Haas, the nature and disposition of the objections will be considered in the disposition of each claim.

The parties in the pleadings and argument have raised many contentions and defenses. All of these have been considered and most of them have been expressly or impliedly ruled upon in the views hereinafter expressed. Other matters have been considered and do not enter so completely in the conclusion reached. For example, I am of the opinion that the jurisdiction of the Court of Chancery of the State of Delaware was complete and adequate to sustain the decision and order of the Chancellor as to the disposition of the General Motors stock and the dividends received thereon;

I am of the opinion that the Family Court of the State of Delaware did not have exclusive jurisdiction of any matters in this case for the reason, inter alia, that the parties had no family relationship after the date of divorce, January 25, 1955; I am of the opinion that neither laches, nor action in analogy to the Statute of Limitations bars any claim of the parties herein.

No separate findings of fact or conclusions of law are separately filed since such findings and conclusions appear herein.

Passing, for the moment, the general claims of Items 1 and 2, we come to the specific claims of the parties.

### Support Payments

3(a) The facts and conclusions relative to this claim are as follows:

The parties had been married in 1922. Serious difficulties developed between them a relatively short time before November 1950. About November 24, 1950 the husband left the home and immediately instituted an action for divorce in the Superior Court of the State of Delaware. Within a few days the wife instituted in the Family Court of the State of Delaware an action against the husband for non-support and a fugitive warrant was served on the husband at Gary, Indiana. In early January 1951 the husband returned to Delaware and negotiations were had as to the support for the wife. These negotiations became crystallized on January 8, 1951 when counsel for the husband addressed to counsel for the wife a letter containing the understanding which had been reached, and this letter has been set out in the preceding recital of facts.

At that time the husband deposited with his counsel some $2,500 and from this fund the payments specified in the letter were made until the fund was exhausted in August 1951. After August 1951 and until May 1953 the payments continued to be made from the "escrow fund". Mrs. Haas declined to receive further payments from the "escrow fund" because she was of the opin-

ion that what she considered was her own half of the "escrow fund" was being depleted and she was in effect paying her support from her own money.

Under the circumstances, Mrs. Haas claims to be entitled to support payments of $250 per month from the date of the last payment in May 1953 to the date of the divorce in January 1955, being 20 payments and amounting to $5,000.

The defendant, Leon Haas, contends that the agreement was of no binding effect after the final dismissal of the Delaware divorce suit and contends that after the fund initially deposited by him in January 1951 was exhausted, the subsequent payments to the wife were to be made from the jointly owned funds in the escrow account. The defendant contends that the initial deposit made by him to his counsel in January 1951, and consisting of about $2,500, had originally been joint funds which were withdrawn by him when he left in November 1950 and all other payments should have been made from the joint funds. The defendant overlooks the fact that when he personally withdrew practically all of the funds in the joint account upon his leaving in November 1950, as perhaps he might rightfully do, since it was a joint account, he converted such withdrawals to his own use and it was thus his own money that he depoisted with his counsel for the payments specified in the letter of January 1951.

I am of the opinion that the contentions of the plaintiff, the wife, are correct. The agreement as to payments to the wife did not specify that they were to stop when the Delaware divorce was refused. Clearly, while the marriage subsisted and until final divorce in January 1955, the husband could have been called upon for support. A support proceeding was actually in existence at the time of the agreement, and the effect of the agreement was clearly to forego the entry of a support order by the Court, and this seems to have been the intention of the defendant. Counsel for the wife suggested the formalization of the agreement in the proceedings for sup-port but this was not done at the instance of counsel for the husband.

Any ambiguity in the agreement as to its termination was created by counsel for the husband, the writer of the letter, and it is seldom that ambiguities are solved in favor of him who created them.

Clearly, the payments to the wife from January 1951 to August 1951 were made from the funds of the husband alone, deposited by him with his counsel. When these funds were exhausted, exactly the same amounts continued to be paid to the wife from the "escrow fund". On July 9, 1952, Judge Carey stated by letter opinion that he would refuse the divorce which the husband had instituted although the final order in the divorce suit was not made until June 24, 1954. The payments to the wife did not stop with the refusal of the Delaware divorce by Judge Carey but continued exactly as in the past until April 1953 when they were stopped, not by the husband but by the wife herself upon the belief that the husband's share of the "escrow fund" had been exhausted. The parties placed a practical construction of the agreement which seems to be in accord with the facts and the law. In August 1951 the source of the payments changed from the husband's personal funds in the hands of his counsel to the "escrow fund" in which the parties had an equal interest. If the payments were charged to the joint interest in the "escrow fund", the effect would be an automatic reduction of his payments to his wife by one half and for this effect there is not the slightest suggestion.

I am of the opinion that the wife has a claim for such sum as was agreed to for support until the marriage was dissolved in January 1955 and the sum of $5,000, being 20 monthly payments of $250 each, is to enter into the final adjustment between the parties.

3(b) The wife claims the amount of payments made by her for the items particularly mentioned in the letter of January 8, 1951 and agreed to be paid by the husband, said items consisting of "fuel, telephone, electric and gas bills,

water, taxes and mortgage payments." The time covered by the payments is for the period from the last payment in June 1953 to the date of divorce, January 25, 1955, and the items amount to $2,227.65.

This item of claim seems to be governed by the same facts and principles already discussed in 3(a). The items were expressly agreed to be paid by the defendant and the payments by the plaintiff have been proven. This item therefore, I think, should be considered in connection with the final adjustment between the parties.

3(c) The wife claims the sum of $426.71 expended for insurance on the entirety property from the last payment from the "escrow fund" on April 29, 1953 to the date of divorce on January 25, 1955.

■ Insurance was not one of the subjects explicitly mentioned in the Killoran letter of January 8, 1951 which would be paid by Leon V. Haas. While certain payments for insurance may have been made from the "escrow fund", yet I cannot add to the agreement made by the parties. The defendant concedes that the defendant is liable for one half of the amount for insurance, and the amount of $213.36 will be considered as to this item in connection with the final adjustment between the parties.

3(d) This claim for property maintenance and amounting to $769.67 is for items not mentioned in the letter of January 8, 1951 and covers items for which the defendant has not agreed to pay. It will be governed by the principles hereinafter to be considered under 3(f).

3(e) This item of claim of $60.00 concerned a check from an insurance company for some small fire damage. The amount of the check was expended by the wife upon the property. The check was made out in the joint names of the husband and wife but the husband refused or neglected to endorse the check. However, the husband endorsed and delivered the check at the trial and the item will not be further considered.

### Expenses in Improving 4704 and 4704(A) Washington Boulevard

■ 3(f) This item presents one of the most serious questions in the case. It concerns the rights of the parties as respective tenants by the entirety during the period between the separation and final divorce, viz., from November 24, 1950 to January 25, 1955. Delaware law must govern both by reason of general principles of law and stipulation of the parties in the pretrial proceeding. After the date of the divorce it seems clear and is admitted that the rights of the parties are those of tenants in common.[1] Some restatement of the facts may be desirable to make the questions more clear.

Prior to November 24, 1950 the parties lived together in a house known as 4704 Washington Boulevard in Wilmington, Delaware, held by them as tenants by the entirety. On November 24, 1950, the husband left the domicile and the causes for such separation are not considered by me.

On the premises owned by the parties as tenants by the entirety was a larger house in which the parties lived and a smaller building or log cabin for summer use without heat, light, or plumbing.

For a time after the separation, the wife continued to live in the larger house but being unable to maintain herself there and commencing in January 1954, the larger house was rented for $200 a month until August 1955 when the rental became $225 per month. When the wife rented the larger house and having no other place to live, she borrowed the money and improved the smaller house upon the same premises installing heat, light, plumbing and other improvements necessary as dwelling. On these improvements, she claims to have expended the sum of $5,250.39 and this item she seeks to recover in this action. All of the expenses laid out upon the smaller house were made prior to divorce and while the parties held the property as tenants by the entirety.

---

1. Townsend v. Townsend, 35 Del. 493, 168 A. 67.

This item of claim then presents the question whether as between parties formerly holding as tenants by the entirety one tenant after divorce can be called upon to account for rents received by him or her while the marriage subsisted, and the somewhat similar principle whether one tenant by the entirety may make improvements upon the entirety property and after divorce call upon the other tenant in common for reimbursement. It would seem that in a proceeding in a Court of Equity which is in effect a balancing of the equities of each party, the same principles might be applicable to a certain extent to each situation.

It is not necessary herein to generally discuss the law of Delaware with regard to the origin, effect or general principles of estates by entireties. This has been done in the cases cited in the footnote.[2]

The principles of law applicable in other jurisdictions with reference to one tenant by the entirety being liable to account to the other for rentals received may be found in 41 C.J.S. Husband and Wife § 34, p. 463; Annotations in 27 A.L.R. 264; 39 A.L.R. 410; 51 A.L.R.2d 399.

Much of the difficulty in determining the rights of the respective tenants by the entirety, and especially the liability for rentals received, grew out of the common law principle that the husband was entitled to the entire usufruct of an estate by the entirety and the effect of the various Married Womens Acts upon that relation. Most authorities have held that such right in the husband is not an incident to the estate by the entirety but a part of the common law marital right.

There is much to be said for the position taken by later cases that in view of the statutes altering the property rights of husband and wife, one spouse is accountable to the other for rents received from land owned by them as tenants by the entirety.[3]

■ I am, however, not permitted to accept that view of the general law which I think preferable. Two of these four consolidated cases were removed to this Court from the Courts of Delaware, and two are brought in this Court solely because of diversity of citizenship. I must, therefore, determine this question according to the law of Delaware or, lacking a definite decision of the Delaware Court, I must determine if I can what the Delaware Court would do in the present circumstances and at this time.[4]

In connection with the Delaware law applicable to the present question, attention must be drawn to the case of In re Cochran's Estate, 1949, 31 Del.Ch. 545, 66 A.2d 497, 499. There an estate by the entirety had existed. After a divorce the husband brought partition proceedings in 1949 in the Orphans Court of Delaware, being a Court vested with a large measure of equitable power. The wife filed an answer stating, in effect, that since 1941 she had made all expenditures for maintenance and repair of the property, had made all payments of interest and principal of the mortgage on the premises as well as taxes and insurance, and sought an order charging one half of these expenses on the husband's interest in the proceeds of sale of the property. The Court, after reciting the allegations of the answer, said:

"* * * But no case is cited which sustains the right in equity of one tenant by the entirety to require the other to contribute to reasonable expenditures made for the repair of the property during the

**2.** Kunz v. Kurtz, 8 Del.Ch. 404, 68 A. 450; Hurd v. Hughes, 12 Del.Ch. 188, 109 A. 418; Heitz v. Sayers, 32 Del. 207, 121 A. 225; Townsend v. Townsend, 35 Del. 493, 168 A. 67; Carlisle v. Parker, 38 Del. 83, 188 A. 67; In re Giant Portland Cement Co., 26 Del.Ch. 32, 21 A.2d 697; In re Cochran's Estate, 31 Del.Ch. 545, 66 A.2d 497; Colton v. Wade, 32 Del.Ch. 122, 80 A.2d 923.

**3.** See 51 A.L.R.2d 399.

**4.** Kowalewski v. Pennsylvania R. Co., D. C., 147 F.Supp. 429, 431; McLouth Steel Corp. v. Mesta Machine Co., 3d Cir., 214 F.2d 608, 610.

existence of the tenancy, even if they are alleged and proved to have been necessary for its preservation."

The Court continued:

"Because of the nature of the tenancy, if one tenant leases the property and collects all of the rents, it seems probable that in the absence of unusual circumstances the other cannot require an accounting for a part of them."

The Court intimated that one tenant by the entirety could require from the other, under certain circumstances, contribution for certain expenses for liens such as mortgages or taxes. This recovery, the Court said, would be under principles of subrogation, unless the payments were to be viewed as gifts to the other spouse. Certain comments as to the cited case may not be inappropriate. Whether the statement as to the accounting for rentals may have been precisely required by the reported facts of the case is not clear but contributions for repair and maintenance of the property were clearly before the Court. The author of the opinion was, at the time, Chancellor of the State of Delaware and as such, the presiding Judge of the Supreme Court of Delaware. The Court itself by the then existing constitutional provisions,[5] and with two judges sitting, was a court of last resort as to the questions before it and from which no appeal could be taken.

The Court in the cited case plainly rejected the, so-called, New Jersey rule that the possession of tenants by the entireties partakes of the nature of a tenancy in common though subject to the right of survivorship. This opinion, in effect, concludes that in Delaware accounting for rentals or contributions for improvements may not be had. The Court cited with seeming approval[6] certain Pennsylvania cases but the various

holdings in Pennsylvania are confusing and difficult to understand.[7]

Some Courts in considering claims by one tenant by the entirety against the other for contributions for repairs or improvements to the entirety property have viewed the improvements as intended as a gift to the other spouse. Such was the final disposition of In re Cochran's Estate supra. This principle has much to commend itself where the parties are living together at the time the improvements were made. Where, however, before the expenditures were made a permanent separation has taken place, bitter recriminations indulged in and a divorce suit actually brought, it is a violent assumption that the expenditures were intended as a gift. All these facts exist in the present case and, indeed, to a lesser extent in In re Cochran's Estate.

■ Since it is my duty to ascertain the status of the Delaware law, I must conclude from the only source available that neither party to a former estate by the entireties, can, after divorce, require an accounting of rentals received by one party while the estate by entirety existed, or require contributions for expenses of a general nature made by one tenant by the entirety prior to divorce. Such was the case of In re Cochran's Estate.

In the present case the husband concedes his liability for one half of the charges for interest on the mortgage, taxes and insurance. The conceded items have all been considered by me under Item 3(b) with the exception of insurance which was considered under Item 3(c).

Consequently, claims by the wife for the full amount of expenditures made upon the property while the marriage subsisted and the estate by entireties remained and which are embraced within Items 3(d) and 3(f) cannot be allowed. This is by reason of the peculiar attri-

5. Art. 4, Sec. 11 of Constitution of 1897, as amended, Del.C.Ann.

6. Compare In re Giant Portland Cement Co., 26 Del.Ch. 32, 21 A.2d 697, 704.

7. See "Property Disputes Between Husband and Wife in Pennsylvania", 99 U. of P. Law Review 498, 503 et seq.

butes of the estate by entireties as announced by the Courts of Delaware. A portion of the plaintiff's claim for improvements must, however, be later considered in connection with the defendant's claim as a tenant in common for an accounting of the rental value of the improved property while occupied by the wife.

Rentals for the period prior to the divorce on January 25, 1955 will also, because of the law of estate by entireties, be eliminated from the computation.

■ 3(g) This item concerns an amount of a fee for an expert medical witness involved in the Delaware divorce suit. At the trial of that divorce and in connection with the refusal of a decree, the Judge of the Delaware Court made an allowance of $400 for expert medical witnesses. It is now alleged that, through error, the additional sum of $200.00 expended by the wife for such witnesses was omitted and it is now sought to recover them. This Court has no power to assess costs or make allowances in such other matters, and the amount will not be allowed.

Items 3(h), (i), (j) and (k).

These items will be consolidated for consideration since they all grow out of transactions concerning the General Motors stock. This matter is both complicated in nature and in facts and extensive in presentation. It will be condensed as far as possible. The facts largely appear in two decisions of the Court of Chancery of the State of Delaware reported in 119 A.2d 358 and 124 A.2d 7 and orders therein. Leon V. Haas and Arle E. Haas owned, as tenants in common with a right of survivorship, 200 shares of General Motors stock, such stock being registered in both their names. The shares were pledged with the Equitable Trust Company as collateral for a loan, Arle E. Haas having signed the assignment generally on the certificate itself. At a later date the loan to the Equitable Trust Company was paid off and the certificates delivered to Leon V. Haas. Leon V. Haas then took the certificates and acting by virtue of the general assignment of Arle E. Haas for the purpose of collateral, had the shares transferred to his own name alone. Leon V. Haas then by an assignment (not registered with the General Motors Company) vested some right in his sister, Grace Haas. The stock was then pledged as collateral for a loan of $10,000 with Central Bank and Trust Company in Florida.

■ On February 17, 1955, Arle E. Haas commenced an action in the Court of Chancery of the State of Delaware against Leon V. Haas, Grace Haas and the General Motors Company to have determined her rights in the stock. Neither Leon V. Haas nor Grace Haas appeared and judgments by default were rendered against them. A restraining order and subsequently an injunction were granted restraining the transfer of the stock and this injunction was ordered served on Leon V. Haas.

On March 25, 1955, after the preliminary injunction had been granted but before any notice had reached the Florida Bank, Leon instructed the Bank to sell the stock, pay off its loan and to pay him the balance. This was done and the Bank deposited to Leon's credit $11,974.88 which, except for a small amount, was immediately withdrawn by Leon V. Haas.

In the meantime, by action of the Board of Directors, the stock of the General Motors had been increased by a stock dividend so that the original 200 shares were represented by certificates for 600 shares. When the broker selling the stock for the Florida Bank attempted to transfer the shares, the fact of the restraining order became known. The Florida Bank then intervened in the Delaware Chancery action, repurchased the stock and deposited it in the Court of Chancery, and the matter went on to hearing. The Chancellor, by order dated July 23, 1956, determined that the intervening Central Bank and Trust Company was entitled to 408 shares of the new stock of the General Motors, such allocation being based upon the closing price at $47.25 per share on the New York Stock Exchange at the close of business

on July 20, 1956. 192 shares of the common stock were directed to be delivered to Arle E. Haas. The Chancellor determined that Leon had fraudulently converted the stock which was in the names of both Leon V. Haas and Arle E. Haas, with the right of survivorship, such conversion being to his own use alone and he having received the proceeds of the original sale from the Central Bank. The allocation of 408 shares of the stock to the Central Bank was valued at $19,278 to compensate them for the loan made to Leon together with the amount that they had already paid Leon from the original sale.

Arle was determined by the Court to be entitled to one half of the stock of the General Motors, or 300 shares of the new stock. She received 192 shares. She claims, as a lien against Leon, the value of the 108 shares at a valuation of $47.25 per share, amounting to $5,103.

3(h) I think that Arle E. Haas is clearly entitled to a claim for the value of the stock. The Chancellor of Delaware has determined that Arle E. Haas was entitled to one half of the stock. His order could only be effective on the amount of stock he had in Court, but as to the rights of Arle E. Haas, his conclusion is res adjudicata. He clearly showed that Leon V. Haas had received the proceeds of the sale of the stock belonging to Arle E. Haas which he had fraudulently converted to his own use.

The amount of the claim of the plaintiff is $5,103. It is not necessary for me to determine the exact date of the fraudulent conversion by the defendant and whether it occurred when first he had the stock registered in his own name alone. At that time the transaction might have been subject to the equities of the parties. When, however, he pledged the stock with the Florida Bank and then directed that Bank to sell the stock and pay the balance of proceeds to him, he brought the equitable rights of the innocent third party into being which equitable rights were recognized by the Chancellor. The Chancellor adopted $47.25 as the value of the stock and determined that Arle E. Haas was entitled to 192 shares. Having been originally entitled to 300 shares and having received by order of the Chancellor 192 shares, her claim is for 108 shares at the valuation fixed by the Chancellor, making the claim $5,103 and this should be allowed. This elaboration is only made because of the different positions adopted by the defendant. At the argument, the defendant, while disputing the validity of the claim, explicitly conceded the correctness of the amount, if the claim was allowed, and yet in his brief, he pressed for a different and lesser figure.

3(i) While Leon V. Haas held the General Motors stock thus fraudulently converted, he received as dividends thereon the sum of $3,900. These payments of dividends were made to Leon V. Haas alone as a direct result of his fraud in registering the stock in his individual name. As Arle E. Haas was entitled to the one half of the stock, she was clearly entitled to one half of the dividends. The amount of the claim has been conceded and the sum of $1,950 in favor of Arle E. Haas must enter into the adjustment between the parties.

3(j) In this claim Arle E. Haas seeks to recover the amount of her counsel fee expended in the trial of her action in the Delaware Court of Chancery. It is not necessary for me to consider whether that trial Court could or would have allowed reimbursement for the sum expended. I am clear that this Court has no power to pass upon the fairness of the amount or to decree its payment and the amount will not be allowed.

3(k) At the time of the stock dividend declared by General Motors, there were certain rights given to stockholders to subscribe to additional shares. These rights were not exercised, being in the name of Leon V. Haas alone. There was given one right to a share and there were 200 shares of original stock, making 200 rights in all and 100 rights to which Arle E. Haas would have been entitled. The rights to subscribe were freely traded in on the Stock Exchange and the highest value of the rights at the pertinent time

was $1.1718. The value of the rights which Arle E. Haas lost was $117.18 and this amount must be included in the adjustment between the parties.

▇ 3(*l*) At the hearing in November 1956 the plaintiff, Arle E. Haas, presented an account of the rentals received from the property from January 25, 1955 (the date of divorce) to the date of hearing. These rentals amounted to $4,900.-00 and the expenses on the property were proved as follows:

| | | |
|---|---|---|
| Repairs and improvements | 123.73 | |
| Interest on mortgage | 1181.25 | |
| Taxes, Water Rent, Insurance, &c. | 763.32 | $2068.30 |

---

The disposition of the matter having been delayed for such a long period, the account of rentals and expenses has, by agreement and on February 17, 1958, been brought down to January 25, 1958.

This additional account is as follows:

Additional rent from December 15, 1956 to January 25, 1958 amounts to $2,-350, making a total of rent received by Arle E. Haas of $7,250.

Additional amounts expended on the properties were proved as follows:

| | | | |
|---|---|---|---|
| Repairs and improvements | 172.26 | Total | 295.99 |
| Interest on mortgage | 900.00 | Total | 2081.25 |
| Taxes, Water Rent, Insurance, &c. | 672.60 | Total | 1435.92 |
| | | | $3813.16 |

---

Three items of additional expenses are disallowed. They are respectively $28.00, $300.00 and $487.50. They are claims for personal service by Arle E. Haas in painting, in claimed commissions for renting the property and claim for personal service in taking care of the property and collecting rents.

| | |
|---|---|
| Total Rent received by Arle E. Haas | 7250.00 |
| Total Expenses allowed against the rentals | 3813.16 |
| | $3436.84 |

One half of this amount should be allowed to Leon V. Haas or $1,718.42

---

Before considering the consolidation of the claims of the parties, I must give specific attention to several matters connected with the claims of the defendant, Leon V. Haas.

It is entirely conceded that after the "escrow fund" was established in the name of counsel for both parties that the sum of $1,900 was withdrawn to discharge a personal obligation of Leon V. Haas, being the amount assessed against him by the Delaware Court for expert witness fees and counsel fees in the Delaware divorce action. From the amount deposited in this Court to be divided equally between the parties (subject to

the claims herein determined), there must first be deducted the sum of $1,900 to be credited to Arle E. Haas, being the equivalent sum withdrawn by Leon V. Haas for his personal account.

It seems also clear that the defendant, Leon V. Haas, is entitled to a credit from some dividends on the General Motors stock involved in the proceeding in the Court of Chancery of Delaware. The defendant herein has been held liable for one half of the dividends declared by the General Motors stock and paid to Leon V. Haas while he held the stock. During the course of the litigation dividends had been earned but not paid and at the conclusion of the litigation the sum of $1,672.40, being all of the mentioned dividends, less costs, was paid to Arle E. Haas. Since Arle E. Haas has been decreed entitled to one half of the stock, she should be entitled to but one half of these dividends and Leon V. Haas should be credited with $836.20, being one half of the dividends received by the wife.

The defendant, Leon V. Haas, has made several claims in connection with the household furniture remaining in the residence when he left in November 1950. A small portion of this furniture was sold by the plaintiff for the sum of $278. With the exception of a few articles given away by the wife, the residue of the furniture is now in her possession. The defendant claims one half of the value of the furniture which was sold and one half of the value of the furniture remaining in the possession of the plaintiff. The plaintiff, Arle E. Haas, claims that the defendant on his leaving the domicile abandoned the furniture. I find no legal or other sufficient evidence of an abandonment and am of the opinion that the defendant is entitled to one half of the furniture which was sold and an interest in the furniture remaining. My great difficulty is in placing a fair value on the furniture from the evidence before me. The furniture had been in use for many years and a list is in evidence. The defendant places a valuation on it of over $4,000. Some $4,000 insurance is carried but this includes all the personal property of the plaintiff including her jewelry, clothes and other matters of a personal nature. In view of the age of the furniture and the many years of use, I fix upon the sum of $2,500 as the value of the furniture and one half of the amount will be credited to the defendant as well as $139, being one half of the value of the furniture sold. The valuation of the furniture is concededly somewhat lacking in definite proof but both parties have failed to avail themselves of opportunities to make it more definite.

I must now give some attention to the claims of the defendant, Leon V. Haas, to rentals both from the larger house and of the smaller house, the latter being the log cabin converted into a residence by improvements made by the plaintiff. The claims as to the two houses do not stem from the same rights. Both of the claims are for rent subsequent to the date of divorce, January 25, 1955, and while the parties were tenants in common.

At early common law one tenant in common was not liable to his co-tenants for any adjustment of rentals. By Statute of 4 & 5 Anne, Ch. 6 (1705) one tenant in common was made liable to his co-tenant for proper adjustment of rentals received by such tenant from third parties. Since the passage of the cited Statute such has been the general current of the law and this furnishes the basis of the claim of the defendant to his share of the rentals received by the plaintiff from the tenant of the larger house from the date of the divorce until final adjustment of the rights of the parties.

The general rule of law, to which there is some exception, confines the Statute of Anne to rentals received from third persons and the Statute of Anne does not render one tenant in common liable to a co-tenant for use and occupation.[8] It is not necessary to discuss any cleavage of the law in this regard

8. See cases collected in 27 A.L.R. 184; 39 A.L.R. 408; 51 A.L.R.2d 388–487.

because of the Delaware Statute. Since the Act of February 11, 1829, now found as 25 Delaware Code, Sec. 702, a tenant in common may enforce against a co-tenant a claim for use and occupation. This Statute was applied In re Estate of Journey, 7 Del. 1, 44 A. 795. The Chancellor of Delaware, held that a tenant in common was liable under the Statute to his co-tenants for the rental value of the property while he was in the sole possession of it. The Chancellor held, however, that the tenant in common so held liable for use and occupation was entitled as a credit on the rent account of the valuation of the permanent improvements placed thereon by him.

Such is the status of the claim of the defendant for rentals of the improved log cabin occupied by the plaintiff. The Journey case holds that the tenant in possession may be liable for use and occupation at its rental value but is entitled as a credit the value of the permanent improvements made by him.

 The defendant here claims the rental value of the improved cabin was $100 per month and this valuation by a real estate agent is the only evidence of value in the case. The defendant claims one half of this amount for the three years following the date of divorce and amounting to $1,800.00. The Journey case, supra, however, holds that a credit should be allowed for permanent improvements placed on the building by the plaintiff.[9] One half of the amount expended on these improvements exceeds the rental claimed by the defendant.

The improvements on the improved log cabin were made while the parties were tenants by the entireties and I have herein held that, owing to the strict provisions of that tenancy and the conclusions reached by the Delaware Courts, the full amount of the improvements could not be recovered. This, however, is a Court of Equity trying a consolidation of a partition suit with three other suits involving all the equities of the parties. The Chancellor of Delaware in Colton v. Wade, 32 Del.Ch. 122, 80 A.2d 923, 925, while recognizing the existence and principles of tenancy by the entirety said,

> "The common law rule as to entireties is of judicial origin and its application to certain circumstances does not mean that it will be permitted to override other equally important common law or equitable principles."

No reason seems to exist to prevent the claim for improvements being used in equity, pro tanto, as a credit to a charge for use and occupation of the same improved building. Under the facts of this case the improvements could not be assumed to have been made as a gift to the husband. The permanent improvements consisted in large measure in installing heat, light, water, kitchen facilities and making the property available as a residence and without which it would not have been suitable for such use. It is true that in Wilson v. Lank, 12 Del.Ch. 413, 107 A. 772, it was held that it is the improved value of the property and not the cost of improvements that is the criterion in allowing the value of the improvements. I have, however, full testimony of the cost and nature of the improvements and I can take judicial knowledge of the necessity of the improvements in making a log cabin into a habitable structure. Equity will also recognize that the improvements made upon the log cabin and the use of the cabin as a residence by the co-tenant freed the larger house for rental to third persons and such rentals have been accounted for.

I am of the opinion, therefore, that the claim of the defendant for one half of the rental value of the improved log cabin used and occupied by the plaintiff, co-tenant in common, and without allowance

9. See annotations in 1 A.L.R. 1189; 122 A.L.R. 234 and annotations previously cited.

óf the pro tanto value of the improvements without which the rentals could not have accrued cannot be allowed. The defendant will receive his share of the improvements as reflected in the sale of the property.

## Summary

Summarizing the disposition of the various claims, the following result is obtained.

Arle E. Haas will be entitled to:

| | | | |
|---|---|---|---:|
| 3 | (a) | The support payments agreed upon by letter of January 8, 1951. | $ 5,000.00 |
| 3 | (b) | The items of payments set out in above letter. | 2,227.65 |
| 3 | (c) | Insurance items agreed to (one half). | 213.36 |
| 3 | (h) | Value of General Motors Stock. | 5,103.00 |
| 3 | (i) | Dividends on General Motors Stock. | 1,950.00 |
| 3 | (k) | Value of rights to purchase General Motors Stock. | 117.18 |
| 3 | (l) | One half of amount expended on property. | 1,718.42 |
| | | | $16,329.61 |

Leon V. Haas will be entitled to:

| | | |
|---|---:|---:|
| One half of rentals received from January 25, 1955 to January 25, 1958. | 3,625.00 | |
| One half dividends of General Motors Stock received by plaintiff. | 836.20 | |
| One half value of furniture sold. | 139.00 | |
| One half value of furniture retained | 1,250.00 | 5,850.20 |
| | | $10,479.41 |
| Amount of deposit in Court | | $25,882.95 |
| Deduction to equalize withdrawal by Leon V. Haas. | | 1,900.00 |
| | | 23,982.95 |
| Each entitled to ½ of balance of deposit. | 11,991.47 | |

Arle E. Haas

| | | |
|---|---:|---:|
| One half of balance of deposit. | 11,991.47 | |
| Claims against Leon V. Haas. | 10,479.41 | |
| Amount to equalize Leon V. Haas withdrawal. | 1,900.00 | 24,370.88 |

Leon V. Haas

| | | |
|---|---:|---:|
| One half of balance of deposit. | 11,991.48 | |
| Less amount of claims | 10,479.41 | |
| | 1,512.07 | 1,512.07 |
| Amount of deposit in Court | | $25,882.95 |

The foregoing discussion has considered and determined every claim presented by either of the parties. These claims have been found within the compass of the "escrow fund". The determination of these claims, then, disposes of three of the four consolidated cases in their entirety, leaving only No. 1757, the partition suit, for consideration. Part of the claims set forth in the partition suit have been herein determined, leaving only the actual partition itself remaining and with no adverse claim by one of the parties against the interest of the other party in the real estate.

Each party to this litigation shall pay his own costs.

I am of the opinion that a partition can not be had upon the present pleadings and will call for another pretrial conference before that case can be further advanced.

An appropriate order may be submitted.